30332. JOHNSON et al. v. EIDSON et al.

HALL, Justice.

We granted certiorari in this case to review the construction of the adoption statutes by the Court of Appeals, specifically Code Ann. §§ 74-403 and 74-414. The Court of Appeals affirmed the trial court in overruling the natural parents' objection to the adoption of their daughter by the maternal grandparents and granting the grandparents' petition of adoption. *Johnson v. Eidson,* 135 Ga. App. 335 (217 SE2d 460) (1975). In order to do so, however, both of these courts read "moral unfitness" from Code Ann. § 74-414 into the requirements of Code Ann. § 74-403. We think this is contrary to the intent of the legislature as well as prior judicial decisions, and we accordingly reverse.

Code Ann. § 74-403 (1) provides that "[e]xcept as otherwise specified . . . no adoption shall be permitted except with the written consent of the living parents of a child." The exceptions appear in Code Ann. § 74-403 (2): "Consent of a parent shall not be required where a *child has been abandoned by such parent,* or where such parent

of a child cannot be found after a diligent search has been made, or where such parent is insane or otherwise incapacitated from giving such consent and the court is of the opinion that the adoption is for the best interest of the child, or where such parent has surrendered all of his or her rights to said child to a licensed child-placing agency, or to a court of competent jurisdiction for adoption, or to the Department of Human Resources through its designated agents, or where such a parent has had his or her parental rights terminated by order of a juvenile or other court of competent jurisdiction, or where such parent is dead." (Emphasis supplied.) It was uncontested at the hearing that none of the above grounds were applicable in this case. Even though the grandparents had temporary custody of their grandchild, the parents' rights had not been terminated by court order. See *Jackson v. Anglin,* 67 Ga. App. 320 (20 SE2d 149) (1942).

The Court of Appeals, nevertheless affirmed the order of adoption by construing Code Ann. § 74-403 in light of Code Ann. § 74-414, which requires a hearing before the adoption is granted. This section provides "[i]f the court is satisfied that the natural parents have just cause to be relieved of the care, support, and guardianship of said child, or have abandoned the said child, or are morally unfit to retain custody of the said child," and the petitioners are fit and able to care for the child, who is suitable for adoption, it may enter an order of final adoption. The Court of Appeals thus concluded that " 'moral unfitness' has been introduced into the adoption statutes as grounds of abandonment," and approved the order of adoption issued by the trial court. *Johnson v. Eidson,* supra, p. 336.

Adoption is a right which did not exist at common law. Thus, since it is statutory in nature, it must be strictly construed in favor of the natural parents. *Johnson v. Strickland,* 88 Ga. App. 281 (76 SE2d 533) (1953). When the statute spells out clearly in one section the conditions under which adoption will be allowed when the parents are living, and in a later section reiterates these conditions in different words, these sections must be construed as consistent, if possible. Since the phrase in Code Ann. § 74-414, "morally unfit to retain custody of the

child," is preceded by the phrase, "or have abandoned the child," to read them both as abandonment as the Court of Appeals has done, would render the clauses redundant. This we cannot do. Nor will we apply the rule that the last expression of the General Assembly, here a 1966 Amendment, controls, for the cardinal rule of construction is. that a statute must be construed to carry out the intent of the legislature.

In 1941, the General Assembly completely revised the adoption statute. Ga. L. 1941, pp. 300—310. That Act as amended constitutes the current adoption law found at Code Ann. Ch. 74-4. Since the 1941 Act was passed, § 3, now Code Ann. § 74-403, has not been changed in any way material to this case. The same is not true of Code Ann. § 74-414, however, and the amendments to this section are relevant to our decision here.

Section 10 of the 1941 Act provided for an interlocutory hearing for a determination of the temporary custody of the child. Ga. L. 1941, pp. 304—305: "If the court is satisfied that the natural parents have just cause to be relieved of the care, support and guardianship of said child, or have abandoned the said child, or are morally unfit to retain the custody of said child, and the petitioner or petitioners is or are financially able and morally fit to have . . . the child, . . . *it shall enter an interlocutory order granting the temporary custody of the child,* to the petitioner or petitioners; or if it is not so satisfied, to refuse such an order and to dismiss the petition." (Emphasis supplied.)

Section 11 of the 1941 Act provided for the final hearing to be held "any time after the expiration of six (6) months from the date of the interlocutory order . . ." Ga. L. 1941, pp. 305—306. At that time, "the court shall set down for a hearing in chambers the question of whether the adoption sought shall be made final . . . *If the court is satisfied that a final order of adoption should be entered,* the court shall enter a decree of adoption." Ga. L. 1941, p. 305. (Emphasis supplied.) There is no language involving "moral fitness" as is now included in Code Ann. § 74-414. It is clear that the legislature intended that the court must satisfy itself that the requirements for adoption have been met; this would have included the re-

quirements mandated by Code Ann. § 74-403: "Except as otherwise specified in this section, *no adoption shall be permitted* except with the written consent of the living parents of a child." (Emphasis supplied.) See, Ga. L. 1941, p. 301.

In 1966, the General Assembly amended the statute by striking section 10 providing for the interlocutory order, and by amending section 11. Ga. L. 1966, pp. 213, 214. In rewriting section 11, now Code Ann. § 74-414[1] it merely adopted the language of section 10 concerning the court's inquiry during the interlocutory hearing,[2] and copied these considerations into the inquiry at the hearing for the final adoption. In doing so the legislature merely changed "temporary custody" to "final custody."

It is clear that in passing the 1966 Amendment, the purpose was to eliminate the requirement for an interlocutory hearing. We do not think the General Assembly meant to change the law of abandonment or to make adoption without parental consent easier, or on any different terms, than is definitively expressed in Code Ann. § 74-403.

We are convinced that this interpretation is necessary and correct. In *Johnson v. Strickland,* supra, p. 283, the Court of Appeals stated that "[t]hese provisions of the Act of 1941, which revised our adoption laws, leave no room for interpretation other than that either consent or the abandonment of the child by the living parent or parents must be shown by petitioners for adoption." And, at page 285: "There is no reason to assume that the General Assembly in revising the adoption laws used the word 'abandonment' in any other sense than as the courts had interpreted it in prior cases." Accord, *Gray v. Sweat,*

---

[1] The section was entirely superceded by Ga. L. 1971, p. 403, but the sentence here disputed was reenacted unchanged.

[2] This hearing involves an investigatory report by the Department of Human Resources and examination of the parties under oath. The report in the present case was favorable to the natural parents. See Code Ann. §§ 74-409—74-411.

125 Ga. App. 797 (189 SE2d 87) (1972) (interpreting abandonment similarly in an adoption case after the 1966 Amendment).

"Moral unfitness" has never been, and cannot now be, construed as abandonment. The acts of the legislature will be construed as intending to state the preexisting law, and not to change it, unless the contrary plainly appears. *State v. Camp,* 189 Ga. 209 (6 SE2d 299) (1939). Such a liberal construction of the statute would be inappropriate to an adoption proceeding which will forever strip these parents (now only 23 years of age) of any claim or right to their child and will give that child to others as if it were their natural child. *Glendinning v. McComas,* 188 Ga. 345 (3 SE2d 562) (1939); *Wheeler v. Little,* 113 Ga. App. 106 (147 SE2d 352) (1966).

In *Glendinning v. McComas,* supra, petitioner sought to adopt his 10-year-old stepson without the consent of the natural father, who allegedly had abandoned the child. The court, in denying the petition, held that the facts did not support the abandonment claim and reiterated the standard to be used in abandonment cases: "Under statutes providing that abandonment may render such consent unnecessary, it is generally held that the abandonment must be such as to show a settled purpose to forego all parental duties and claims." *Glendinning v. McComas,* supra, p. 347. And "there must be an actual desertion, accompanied with an intention to entirely sever [sic], so far as possible to do so, the parental relation, and throw off all obligations growing out of the same.' " *Glendinning v. McComas,* supra, p. 347, quoting Guardianship of Snowball, 156 Cal. 240, 243 (104 P 44) (1909). Clearly then, moral unfitness has nothing to do with abandonment as so defined. Cf. *Jernigan v. Garrett,* 155 Ga. 390 (117 SE 327) (1923).

Moral unfitness may be considered in a petition for change of custody if a substantial change materially affecting the welfare of the child can be shown. Code Ann. § 30-127; *Wilbanks v. Wilbanks,* 220 Ga. 665 (141 SE2d 161) (1965). Also, where the issue is termination of parental rights (without adoption by others), moral unfitness may be a factor in proving that a child is deprived and will suffer serious physical, mental, moral

or emotional harm. Code Ann. § 24A-3201. See *In re Levi,* 131 Ga. App. 348 (206 SE2d 82) (1974). It is significant that under both of these statutes the focus is on the child. In adoption too, the best interest of the child is the ultimate concern, but in accordance with the construction of the statute in favor of the natural parents, the focus must first be on them. "Under the Georgia statute, the only questions before the court in a proceeding for the adoption of a child are: (1) do the natural parents consent to the adoption of the child, or, in some instances have they abandoned the child so as to dispense with their consent as a prerequisite; (2) are the adopting parents worthy and able to care for the child; and (3) is the adoption for the best interest of the child? The court is not required to declare the adoption unless all three of these factors unequivocally appear. If there is no parental consent and the natural parents have not abandoned the child, the court *is required* to deny the adoption. If either or both of the other factors are absent, the court *may deny* the adoption. *Allen v. Morgan,* 75 Ga. App. 738, 747 (44 SE2d 500)." *Herrin v. Graham,* 87 Ga. App. 291 (73 SE2d 572) (1952).

Since the petitioners for adoption have not shown consent or abandonment by the parents, they have not met the requirements of Code Ann. § 74-403. Therefore, the Court of Appeals erred in affirming the trial court, which should have dismissed the grandparents' petition.

*Judgment reversed. All the Justices concur, except Ingram, J., who concurs in the judgment only, and Jordan, J., who dissents.*

SUBMITTED NOVEMBER 7, 1975 — DECIDED JANUARY 7, 1976.

*Mattox & Baldwin, A. Quillian Baldwin, Jr.,* for appellants.

*James E. Weldon, H. J. Thomas, Jr.,* for appellees.