## 66345. SPIRES v. LANCE et al.

SHULMAN, Chief Judge.

This case involves a custody contest between a natural father and a stepfather after the death of the child's mother. Appellant's former wife had legal custody of their son at the time of her death. On the day after the child's mother died, his stepfather, joined by the mother's sister and brother-in-law, filed a petition in the Superior Court of Monroe County, seeking an award of custody to the stepfather. Appellant, the natural father, contested the petition and appeared for a hearing on his motion to dismiss based on jurisdictional grounds. Appellant argued that since he was the legal custodian of the child upon the death of the mother, and since he was a resident of Dodge County, any proceeding for a change of custody would have to be brought in Dodge County. That motion was denied and custody was awarded to the stepfather. We reverse.

1. "Upon the death of either parent, the survivor is entitled to custody of the child; provided, however, that the court, upon petition, may exercise discretion as to the custody of the child, looking solely to the child's interest and welfare." OCGA § 19-9-2 (Code Ann. § 74-106). "It is clear that when a parent having custody dies, legal custody reverts to the other parent unless he has lost his parental rights as provided under [OCGA § 19-7-1 (Code Ann. § 74-108)] or is shown to be *presently* unfit. [Cits.]" *Derby v. Kim,* 238 Ga. 429 (233 SE2d 156).

As we understand the Supreme Court's holding in *Derby v. Kim,* supra, the surviving parent becomes the legal custodian of the child at the moment of the custodial parent's death unless there has been a prior termination of the survivor's parental rights. The surviving parent whose parental rights have not been previously terminated is entitled to custody until a court of competent jurisdiction rules otherwise as provided by law. See *Wright v. Hanson,* 248 Ga. 523 (2) (283 SE2d 882). There is nothing in the record in this case to indicate

that appellant's parental rights were terminated by a court of competent jurisdiction prior to the death of his former wife. It necessarily follows that, at the time the present action for custody was filed, appellant was the custodial parent of his son.

2. Having determined that appellant was the custodial parent of his son immediately following the mother's death, the resolution of the jurisdictional issue becomes simple. The Supreme Court has held in a line of cases from *Matthews v. Matthews,* 238 Ga. 201 (232 SE2d 76), to *Canning v. Evans,* 250 Ga. 85 (295 SE2d 741), that actions in which a change of custody is sought must be litigated in the county of the custodial parent's residence. That was exactly the point made in appellant's motion to dismiss, and the trial court erred in denying that motion. It follows that everything that occurred subsequent to the denial of appellant's order was nugatory. The trial court lacked jurisdiction to award custody of appellant's child to anyone. Appellant is entitled to litigate custody questions concerning his son in Dodge County, appellant's residence.

3. Having ruled that the trial court lacked jurisdiction, it is not necessary to address appellant's second enumeration of error dealing with the merits of the award of custody.

*Judgment reversed. Deen, P. J., Quillian, P. J., Banke, Carley, Sognier and Pope, JJ., concur. Birdsong, J., dissents. McMurray, P. J., concurs in the judgment of the dissent only.*

DECIDED JUNE 17, 1983 —
REHEARING DENIED JULY 7, 1983 — 

*Denmark Groover, Jr.,* for appellant.
*W. Franklin Freeman, Jr., Kenneth R. Waldrep, W. Ashley Hawkins,* for appellees.

BIRDSONG, Judge, dissenting.

I cannot agree with the rationale or result of the majority in this custodial dispute. Accordingly, I must register my dissent to the majority opinion.

The controlling issue in this case is the resolution of what constitutes a "custodial parent." As reflected in the majority's opinion, Andrew Spires and his then wife, Christell (Spires) Bittick were divorced and custody of their minor child Christopher (now ten years of age) was awarded to the mother, Christell. Christell Spires subsequently married John C. Bittick. After that marriage, the evidence shows, in ultimate fact, that Andrew did not pay court-ordered child support for over thirteen months and brought his

delinquent payments into a current state only when faced with punishment for contempt. When the contempt citation was withdrawn, Andrew once again made delayed payments for approximately eight months and brought them to currency again only in face of a second contempt citation. There was evidence that Andrew paid little or no attention to Christopher after the Bittick marriage. On occasion, Andrew displayed a violent and turbulent temper. These facts are highlighted to focus on what I consider to be the intent of the legislature and the judicial interpretation of the legislation enacted by the General Assembly concerning custodial awards.

The facts are undisputed that Christopher was in the custody of his mother and stepfather pursuant to court order. Mrs. (Spires) Bittick and the child were resident in Monroe County, thus there can be no dispute that under normal circumstances a custodial dispute would have to be resolved in Monroe County where the custodial parent and the child resided. It is also undisputed that the natural father but non-custodial parent resided in Dodge County.

The majority has concluded that upon the untimely death of the mother, Christell Bittick, custody by operation of law vested in the natural father, Andrew Spires. It is thus concluded that jurisdiction over a change of custody had to lay in Dodge County, the county of the new custodial parent and could not be in Monroe County in the absence of a custodian in Monroe County, notwithstanding that every normal indicia of the residence of Christopher otherwise was in Monroe County.

As I read OCGA § 19-7-2 (Code Ann. § 74-105) the surviving parent is entitled to custody subject to the discretion of the court and provided the surviving parent has not lost parental and custodial rights because of abandonment or unfitness. To my mind this inhibits transfer of custody by operation of law to the surviving parent upon the death of the custodial parent.

Though there is a basic right in a surviving parent to the custody and control of a child, arbitrarily to transfer custody at the moment of death of the other parent simply because the deceased parent during life never sought to terminate the surviving parent's parental rights for moral unfitness or abandonment, ignores the caveat "looking solely to the child's interest and welfare." OCGA § 19-9-2 (Code Ann. § 74-106), supra. In fact, to require the one custodial parent inter vivos to terminate parental rights, short of adoption by a second bread winner, tends to be counterproductive for it not only terminates parental rights, likewise it terminates parental obligations.

As I view the purpose of OCGA § 19-9-2 (Code Ann. § 74-106), in

the absence of a contest of custodial rights, the surviving parent has the inherent right to custody of his natural child. However, where custody has been placed in one parent together with, as in this case, a stepparent (or other morally fit person) and a change of condition necessitates a re-examination of the custody of the child, I am convinced the appropriate court is in the county in which the child and its custodial parent or person resided prior to the change of condition and this court retains jurisdiction to exercise its discretion as to the custody of the child where there is a question raised as to abandonment or moral fitness of the surviving parent. The statutes involved (OCGA §§ 19-7-1 and 19-9-2 (Code Ann. §§ 74-108, 74-106)) as interpreted by the judicial decisions of this state make clear that before a change of custody occurs the interests of the child must be considered and indeed are paramount. Automatically to divest the court which immediately prior to the changed condition exercised jurisdiction over the child and the custodial parent because of the death of the custodial parent, literally guts the discretionary powers of the court conferred by statute and potentially ignores the welfare of the child by conceivably thrusting the child into an unwholesome or morally unfit or even perhaps a dangerous environment.

I am satisfied that the Superior Court of Monroe County retained jurisdiction over the custody of Christopher until that court satisfied itself that the surviving parent, Andrew Spires, was a fit parent or had not abandoned his rights to such control. *Woods v. Woods,* 238 Ga. 737 (235 SE2d 36). Moreover, inasmuch as that court had the power to do so and exercised its discretion in awarding custody to the stepfather, I would not interfere therein in the absence of a gross abuse of that discretion.

I respectfully dissent. I am authorized to state that Presiding Judge McMurray concurs in the judgment of this dissent only.