## 68169. SPIRES v. BITTICK.

POPE, Judge.

Appellee filed a petition to adopt his stepson after his wife, the child's natural mother and custodial parent, died. The petition alleged that appellant, the child's natural father, abandoned the child as evidenced by his intentional lack of contact with and failure to make court-ordered support payments for the child. The trial court denied appellant's motion to dismiss and granted the adoption.

1. The first of appellant's two enumerations of error is that the trial court should not have denied his motion to dismiss for improper jurisdiction and venue. This contention has no merit. OCGA § 19-8-1 (a) grants exclusive jurisdiction to superior courts in all adoption matters, and venue is proper when the adoption petition has been filed in the county in which the *adopting* parents reside. OCGA § 19-8-1 (b). Appellee, a resident of Monroe County, Georgia, properly filed his adoption petition in the Superior Court of Monroe County notwithstanding the fact that appellant is a resident of Dodge County, Georgia. The venue was proper in the instant case, although it was not in the earlier custody case involving these parties. See *Spires v. Lance*, 167 Ga. App. 331 (2) (306 SE2d 317) (1983). See also *Davey v. Evans*, 156 Ga. App. 698 (275 SE2d 769) (1980).

2. Appellant's remaining enumeration of error challenges the sufficiency of the evidence to support the grant of appellee-stepfather's petition to adopt appellant-natural father's minor child. From the trial court's order it is apparent that the grant of such petition was

grounded in the conclusion that appellant had abandoned his son. "The standard to be used in abandonment cases is whether the alleged abandonment is such as to show a settled purpose to forego all parental duties and claims. There must be an actual desertion, accompanied with an intention to entirely sever, so far as possible to do so, the parental relation, and throw off all obligations growing out of the same." (Citations and punctuation omitted.) *Crumb v. Gordon*, 157 Ga. App. 839, 840 (278 SE2d 725) (1981). Evidence of abandonment of the child by his natural parent must be clear and convincing in an adoption proceeding the result of which is to terminate the natural parent's rights in his child. See *Cain v. Lane*, 168 Ga. App. 405 (1) (309 SE2d 401) (1983); *In re S. D. S.*, 166 Ga. App. 344 (4) (304 SE2d 85) (1983). The order of the trial court granting the stepfather's petition stated that, based upon certain findings which are enumerated below, it found "that these circumstances combine to imply an intention on the part of the natural father to abandon the minor child . . . ."

The "circumstances" relied upon in finding such abandonment relate, inter alia, to failure to pay child support and to maintain consistent contact with the child. The record reveals that appellant entered a plea of guilty to a charge of abandonment for failure to pay child support in March 1980. At the time the warrant was taken on this charge, appellant was *two months* in arrears in child support. On payment of court costs, appellant was given a twelve-month suspended sentence and ordered to pay $140 per month. Following the resolution of the abandonment charge in 1980 through October 1982, appellant paid his support obligations through the Bibb County probation office. Although at times tardy with payments, appellant kept in communication with his probation officer and was never more than a few months late. At the time of the November 12, 1982 death of the natural mother, appellant's payments were current through October 1982. The due date for the November payment was two days preceding her death.

The trial court further found appellant's failure to provide medical insurance for the minor child as directed in the 1974 decree. Appellant testified that his business had switched from one health insurance company to another and that the child had been covered under both policies. His reason for failing to notify the mother of the change was his wish to be sent the medical bill so that he could thereby be informed of the child's illness or injury.

Appellant further testified that he was in business with his father who became seriously ill in December 1979. This illness necessitated recurrent hospitalization and resulted in the death of appellant's father in October 1980. During this time their business suffered a severe decline and appellant's time was in large part taken up with concern

over his father's failing health and with the business.

The record reveals an ongoing conflict between the natural parents regarding visitation of the minor child after the 1974 decree. After the 1974 divorce, the mother remarried for a brief time, taking the child to live in North Carolina during this time. Appellant remarried in 1978 and thereafter moved to Eastman, Georgia. Prior to the mother's mid-1980 marriage to appellee, in the fall of 1978 the natural parents had agreed to specified visitation rights for appellant. According to the record, appellant's exercise of his visitation rights gradually declined after the 1980 marriage of appellee and the child's mother. The conflict between the natural parents, according to appellant, caused such a strain to the minor child that appellant felt it would be in the child's best interest for him to "back off" for a while to give appellee and the child's mother some time in their new marriage. Appellant testified that his child who lived in Forsyth, Georgia visited in appellant's home during spring holidays in 1980. In August 1980, the child stayed with appellant for a week in Eastman and attended his paternal grandfather's funeral in October 1980.

In 1981, according to appellant, for at least "a weekend or so" between January and the summer of 1981, appellant visited with his minor child. During the summer of 1981, appellant took his minor child, along with his wife and her two children, to Six Flags for the day. At the time of the original hearing in this matter, November 18, 1982, appellant had not seen the minor child since the summer outing to Six Flags. He testified that he had tried to call on the child's birthday but was unable to contact him. Due to the schedules of appellee and the child's mother, it had been a problem to contact the child at home. After his September 23, 1982 birthday and before his mother died, the child had received a belated birthday card from appellant containing $50.

The law is clear that when the custodial parent dies, custody of the minor child vests in the surviving natural parent unless that parent's rights have been lost or the parent is presently unfit. *Spires v. Lance,* supra at (1). There is no real question of the natural father's present fitness in this case. The actions of appellant following the death of the natural mother show his intent to regain custody of his son. The mother died suddenly in the early morning hours of November 12, 1982. Appellant telephoned appellee's residence within hours of the death to make arrangements to pick up the child. He was told that the child had just been informed of the mother's death, was very upset, and was asked to wait until after the funeral. Within four hours of appellant's first call to appellee, a complaint seeking custody of the child had been filed by appellee and the mother's sister and brother-in-law. This case, along with the contested custody suit, has been going on since the morning of November 12, 1982 and appellant

has contested both the custody and adoption proceedings. See *Spires v. Lance*, supra. Appellant's lapse in contact with his son is not premised upon a precise *legal* excuse; however, in light of the circumstances of this case, we do not find it wholly nor fatally unreasonable. See generally *Richey v. Cothran*, 140 Ga. App. 580 (231 SE2d 572) (1976). We further recognize that appellee's fitness as a person and as an adoptive parent to the minor child is beyond doubt. Nevertheless, the issue raised in this appeal is the sufficiency of the evidence to show that the natural father *abandoned* his child; that is, that he intended to sever all ties and throw off all obligations and that by doing so, the court was authorized to terminate his parental rights. See generally *In re Hilyer*, 158 Ga. App. 17 (279 SE2d 232) (1981). Although it was presented in an opinion regarding a change of custody, our Supreme Court held that "the appropriate standard of appellate review *in a case where a parent's rights to his child have been severed* is 'whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence . . .'" that the natural parent's rights in his child have been lost. (Emphasis supplied.) *Blackburn v. Blackburn*, 249 Ga. 689, 694 (292 SE2d 821) (1982). See Santosky v. Kramer, 455 U. S. 745 (102 SC 1388, 71 LE2d 599) (1982). From our review of the record and applying the proper appellate standard, we do not find clear and convincing evidence sufficient to enable a rational trier of fact to conclude that appellant-natural father abandoned his son. While appellant's conduct has not been exemplary in either the prompt payment of child support nor in the persistence in exercise of his rights to visitation, the termination of his parental rights is not warranted on these facts. If there is no parental consent and the natural parent has not abandoned the child, the court is *required* to deny the adoption. See *Johnson v. Eidson*, 235 Ga. 820, 825 (221 SE2d 813) (1976); *Crumb v. Gordon*, supra at (3); *Houston v. Smith* 153 Ga. App. 56 (2) (264 SE2d 544) (1980). We, therefore, reverse the grant of appellee's adoption petition.

*Judgment reversed. Deen, P. J., Quillian, P. J., Banke, P. J., Carley and Sognier, JJ., concur. McMurray, C. J., Birdsong and Benham, JJ., dissent.*

DECIDED JULY 31, 1984 —
REHEARING DENIED SEPTEMBER 5, 1984 —

*Denmark Groover, Jr.*, for appellant.
*Randall A. Meincke, W. Franklin Freeman, Jr.*, for appellee.