72568. HARPER v. LANDERS.
(348 SE2d 698)

DEEN, Presiding Judge.

The two minor children who are the subjects of this petition for custody are the offspring of appellee Landers and his former wife, the now-deceased daughter of petitioner Harper. For some time prior to the 1980 divorce, as well as afterwards, Mrs. Landers and the children resided in the home of her parents. During that entire period Landers provided no financial support. Mrs. Landers had a serious heart condition which prevented her holding regular, full-time employment; consequently, she was compelled to seek assistance from the county Department of Family and Children's Services (DFCS) in order to provide necessaries for the children beyond the shelter and food which her parents (themselves persons of limited means) were voluntarily providing. The DFCS subsequently filed petitions against Landers to force him to reimburse the funds expended by the Department for the children's support, but with little success, as Landers, after signing consent orders, nevertheless did not pay. Prior to initiation of the action below, he was some $17,000 in arrears in child support and had been cited for contempt for failing to reimburse DFCS. At some time prior to the mother's death, he moved from Georgia to Florida.

There was evidence that Landers had been an abuser of alcohol and controlled substances and had served a prison term for an unspecified offense, and that at the time the action was filed, he had pending against him in Georgia a DUI charge. Mrs. Landers, the children's mother, died in September 1984 at the age of 32, and the children continued thereafter to reside in the Paulding County home of the maternal grandparents, as they had done for six years previously. The children became entitled to certain social security benefits after their mother's death. There was evidence that Landers, who had hardly seen the children since before the divorce, visited them at least once after their mother's death but made no offer to contribute to their support. In May 1985 he went to the Paulding County school where the children were enrolled and took them to Brevard County, Florida, where they have been ever since.

In July 1985 the grandmother, Mrs. Harper, filed a petition in the Juvenile Court of Paulding County seeking termination of Land-

ers' parental rights, with temporary custody of the children in the DFCS and permanent custody in her; and alleging abandonment, deprivation, and subjection of the children to an unhealthy physical, emotional, and moral environment. Landers answered, denying Georgia courts' jurisdiction over either himself or the children. He alleged that by operation of law he became the children's legal custodian upon their mother's death, and that they were therefore legal residents of Florida, the domicile of their custodial parent. See OCGA § 19-9-2; *Matthews v. Matthews*, 238 Ga. 201 (232 SE2d 76) (1977); *Spires v. Lance*, 167 Ga. App. 331 (306 SE2d 317) (1983).

The trial court granted Landers' motion to dismiss on jurisdictional grounds. In his order, entered December 19, 1985, the court directed the Paulding County DFCS to request the corresponding agency in Florida to investigate the charges of abuse and neglect brought against respondent by appellant. Mrs. Harper applied to this court for a discretionary appeal, which we granted in order to consider whether the trial court erred in granting appellee's motion to dismiss on jurisdictional grounds. Appellant enumerates as error the trial court's failure to find that appellee's parental rights were adversely affected by his acceptance of monies from the DFCS and refusal to repay it when ordered to do so; and (in two separate enumerations) the court's granting his motion to dismiss on jurisdictional grounds. *Held*:

Given appellee's history not only of failure to honor his biological and statutory obligation of support, OCGA §§ 19-6-13 et seq.; 19-7-1, but also of his affirmative and obstinate refusal to pay even when under a court order to do so, it is difficult to resist the conclusion urged by appellant: that the father's interest in his two young children, long on the wane, has now waxed in direct proportion to the potential for pecuniary profit presented by the prospect of gaining control of the children's social security benefits, derived (ironically enough) from their deceased mother.

The law gives parents a *prima facie* right to custody and control of their offspring as against third parties, except when by clear, strong, and convincing evidence it is shown that the parent (or parents, as the case may be) has lost his or her right to custody and control on one of the grounds set forth in OCGA § 19-7-1, or through demonstrated unfitness. See *Blackburn v. Blackburn*, 249 Ga. 689 (292 SE2d 821) (1982); *Miele v. Gregory*, 248 Ga. 93 (281 SE2d 565) (1981). Appellant grandmother contends that Landers' conduct produced a *de facto* forfeiture of parental rights and that OCGA § 19-9-2, whereby custody inures to the surviving parent, is negated by the forfeiture. *Porter v. Johnson*, 242 Ga. 188 (249 SE2d 608) (1978); *Peck v. Shierling*, 222 Ga. 60 (148 SE2d 491) (1966).

The record *sub judice* shows that Landers had both negligently

and wilfully failed to fulfill his statutory duty to provide "the necessaries" for his minor children. OCGA § 19-7-1 (b) (3). Well before the death of the children's mother, he had demonstrated his indifference to their welfare by failing to make any effort to provide for them, even when the mother's failing health left her without income and forced her to seek financial assistance from the state. When ordered by the latter authority on two separate occasions to honor his financial obligation on pain of contempt, he failed and refused to do so. In the meanwhile, he apparently had sufficient funds not only to provide his own "necessaries," but also to support a lifestyle which included indulgence in substance abuse. It was only when, some eight months after the mother's death, he apparently became aware that a reliable (albeit modest) source of regular income in the form of social security checks would be available to him if he had possession of the children, that he evinced his interest in them by "snatching" them from their Georgia school and removing them to Florida. The record makes it plain that Landers' acts and omissions to act before the mother's death, and for seven months afterwards, denote a total indifference to his children's welfare (whether physical, intellectual, or emotional) of such nature and magnitude as likely to justify a finding of unfitness or abandonment, which in the eyes of the law might well lead to a loss of parental rights. See OCGA §§ 19-10-1; 19-10-2. See also *Chambers v. Lee*, 215 Ga. 629 (112 SE2d 614) (1960).

In the fact situation *sub judice*, however, no proceeding to establish abandonment, unfitness, or forfeiture of rights was instituted prior to the mother's death. Therefore, the statutory provision of OCGA § 19-9-2, which gives custody to the surviving parent absent a contrary judicial holding based on strong, clear, and convincing evidence, was probably operative at the time of the mother's death, and appellee at that time became, and continues to be, the children's legal custodian.

Ordinarily, a petition for change of custody must be brought in the county of the legal custodian's residence, whether in Georgia or in another state. *Matthews v. Matthews*, supra. Appellant's petition, therefore, must necessarily fail unless there are other relevant legal principles or provisions to be considered, and the trial court would be right in granting appellee's motion to dismiss. Under the Uniform Child Custody Jurisdiction Act, OCGA § 19-9-40 et seq., however, "[A] court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination . . . if: (1) This state: . . . (B) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody . . . and a parent or person acting as parent continues to live in this state; or (2) It is in the best interest of the child

that a court of this state assume jurisdiction because: (A) The child and his parents or the child and at least one contestant have a significant connection with this state; and (B) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships . . ." OCGA § 19-9-43 (1), (2). OCGA § 19-9-42 (5) defines "home state" as "the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent for at least six consecutive months . . ."

The facts of the instant case fit squarely within OCGA § 19-9-43 (1) and (2), supra. It is undisputed that the children lived in Paulding County, Georgia, with their mother and their grandmother, who both during her daughter's times of disability and after her death "acted as a parent" to the minor children, giving them emotional and financial support. It is also undisputed that Mrs. Harper's petition was filed July 30, 1985, and that Landers was personally served in Melbourne, Florida, on September 21, 1985, both dates being less than six months after May 24, 1985, when the children were removed from Georgia. Thus at the initiation of the action below Georgia was the children's "home state," as defined in the controlling statute, OCGA § 19-9-42 (5), supra. Contrary to appellee's contention, "home state," for all purposes which the Act was designed to govern, does not mean the residence or domicile of the parent having legal custody. See OCGA § 19-2-4. Rather, "home state," for purposes of § 19-9-43, means the place where the *child* lives or has recently lived and where he would presumably still be living had he not been surreptitiously removed therefrom. This definition of "home state" is consistent with the child-directed focus of the entire Act, as expressed in the statement of purpose in OCGA § 19-9-4 (a) and the mandate of OCGA § 19-9-4 (b): "This article shall be construed to promote the general purpose stated in subsection (a)"; namely, to further the child's welfare and best interests and avoid or mitigate the harmful effects of exposure to such experiences as "snatching," frequent removal from one place to another, and the recurrent haggling and reciprocal recriminations of the contesting parties. OCGA § 19-9-1 (a); *Harvey v. Harvey*, 244 Ga. 199 (259 SE2d 456) (1979).

The order of the court below premised the dismissal on the ground that under OCGA § 19-9-2 appellee was the children's legal custodian, and that "their home state would be the residence of the legal custodian." As we have noted, supra, this is not the definition used in the controlling statutes. The court therefore erred as a matter of law in granting the motion to dismiss, and we reverse under the customary "plain error" standard of appellate review. "This is the place" where appellant should be called to account for his deeds and

misdeeds.[1] The substantive issues of abandonment, unfitness, and forfeiture of parental rights, together with related issues, can and should be litigated in the courts of Paulding County, Georgia, where the children made their home until their biological father, in what was perhaps his first affirmative act towards them since they were conceived, spirited them out of this state.

2. Having found reversible error which requires that the issues be tried, we do not address appellant's remaining enumerations of error.

*Judgment reversed. Benham, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in the judgment only, for the reason that the trial court erred in concluding it had no jurisdiction to consider the grandmother's petition. That is the only question before us. The trial court did not reach the merits. Furthermore, it relied only on undisputed facts in reaching its jurisdictional conclusion. Thus, I cannot join the majority in its recitation of "evidence" and "facts" with regard to the father's history, as that is beyond our ken and beyond the question. Besides, we are confined to the facts to the extent they were found by the trial court and are found in its order. *Gibson v. Pierce*, 176 Ga. App. 287, 288 (335 SE2d 658) (1985); *Alonso v. Hospital Auth. of Henry County*, 175 Ga. App. 198, 199 (2) (332 SE2d 884) (1985).

The trial court was correct to choose the Uniform Child Custody Jurisdiction Act to apply to determine its jurisdiction over the case. It erred, however, in concluding that the children's "home state" would have become that of their father in Florida upon the death of their mother in Georgia in September 1984 because he became their legal custodian prima facie by operations of law. OCGA § 19-9-2; *Porter v. Johnson*, 242 Ga. 188, 189 (1) (249 SE2d 608) (1978). It is the "home state" of the child that controls here as the pivot for jurisdiction. It does not turn on parental rights to legal custody, OCGA § 19-9-43. That is the ultimate substantive issue to be decided.

OCGA § 19-9-42 (5) defines "home state" as "the state in which the child, immediately preceding the time involved, lived with . . . a person acting as a parent for at least six consecutive months . . ." I take "the time involved" to mean, in this case, the time of removal in late May 1985. The grandmother is the "person" who was then acting as parent, and it is without dispute that the children were living with

---

[1] Brigham Young, on entering the valley of the Great Salt Lake; quoted by Judge Clark in *Fulton County v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter Day Saints*, 133 Ga. App. 847 (212 SE2d 451) (1975). Our distinguished retired colleague was recently referred to as Savannah's "Folk Hero Judge H. Sol Clark" on page 25 of the September 23, 1985, issue of the *National Law Journal*.

her for even more than six consecutive months before the removal. Thus Georgia was the children's home state when they were removed to Florida. That satisfies the first criterion for this state's jurisdiction under OCGA § 19-9-43 (a) (1) (B).

The second is that the children's absence from Georgia is explained by their removal by "a person claiming [the children's] custody." Not disputed is that the father claims custody and that he removed the children from Georgia.

Third is that this state's interest in the children's custody continues even though they are gone, because the person who was acting as parent continues to live here, and that is true of the petitioner Mrs. Harper.

Jurisdiction being certain under this alternative, it is unnecessary to consider whether jurisdiction would obtain under any of the other provisions describing circumstances which would authorize Georgia jurisdiction over the question of child custody.

Whether the children should be declared "deprived," whether their custody should be given to DFCS and physically to petitioner, and whether the father's parental rights should be terminated, all should now be subject to a trial below at which each interested party will have an opportunity to present the relevant evidence.

DECIDED SEPTEMBER 2, 1986.

*Thomas J. Browning*, for appellant.
*H. Burton Crews, Jr.*, for appellee.