517 S.E.2d 548 (1999)
238 Ga. App. 21
In the Interest of A.N.M. et al., children.
In the Interest of B.C.W.M. et al., children.
Nos. A99A0632, A99A0721.
Court of Appeals of Georgia.
May 10, 1999.
*549 Juliet K. Rowell, Jackson, for appellant (case no. A99A0632).
Richard W. Watkins, Jr., Jackson, for appellant (case no. A99A0721).
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Stephanie B. Hope, Assistant Attorneys General, W. Ashley Hawkins, Forsyth, for appellee.
BLACKBURN, Presiding Judge.
In Case No. A99A0632, Melissa Moore, the biological mother of A.N.M., B.C.W.M., C.J.M., and D.J.T.M., minor children, appeals the juvenile court's termination of her parental rights. In Case No. A99A0721, Benjamin Moore, the biological father of B.C.W.M., C.J.M., and D.J.T.M., appeals the juvenile court's termination of his parental rights.[1] For the reasons discussed below, we affirm.
On appeal, we must determine whether,
after reviewing the evidence in a light most favorable to the lower court's judgments, *550 any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met.
(Punctuation omitted.) In the Interest of R. N., 224 Ga.App. 202, 480 S.E.2d 243 (1997).
Case No. A99A0632
1. Melissa Moore asserts that the trial court erred in terminating her parental rights, contending that the evidence did not clearly and convincingly support such a determination.
The Butts County Department of Family & Children Services (DFACS) has worked with this family on and off since 1992 with issues involving lack of supervision, drug use, including drug use during the pregnancy of the youngest child, and neglect. After the Moores failed to comply with several safety and case plans, the children were found to be deprived and were removed from their custody on January 8, 1997. Specifically, the parents failed to comply with the court-ordered case plans requiring them to provide a stable home environment, to stop using drugs, and to cooperate with counseling. After the Moores lost custody, DFACS formulated another case plan requiring that they maintain an income to meet the children's needs, obtain and maintain a hazard-free residence, attend counseling, attend parenting classes, visit the children regularly, maintain sobriety and remain drug free.
A DFACS report dated February 14, 1997, indicated that Melissa Moore had failed to comply with the case plan goals. She had failed to begin counseling, drug treatment, or parenting education. She had changed residences at least once and had missed one of two scheduled visitations. DFACS filed its petition for termination of parental rights on December 31, 1997. The juvenile court held several hearings on the petition before granting it by order dated September 30, 1998.
Before terminating a parent's rights, a juvenile court must employ a two-prong test. In the first prong, the court must decide whether there is "present clear and convincing evidence of parental misconduct or inability." OCGA § 15-11-81(a). Parental misconduct or inability, in turn, is proven by evidence showing: (1) that the child is deprived; (2) that lack of proper parental care or control is the cause of deprivation; (3) that the cause of deprivation is likely to continue or will not likely be remedied; and (4) that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81(b)(4)(A).... In the second prong of the termination test, the juvenile court must consider whether termination of parental rights would be in the best interest of the child.
In the Interest of V.S., 230 Ga.App. 26, 27, 495 S.E.2d 142 (1997).
(a) Because the Moores did not appeal the trial court's orders finding that the children were deprived, that finding is established for the purposes of this appeal, and we need to consider only the remaining three criteria. See In the Interest of V.S., supra at 29, 495 S.E.2d 142.
(b) The evidence of record supports the juvenile court's determination that Melissa Moore's inability to adequately care for her children was the cause of their deprivation. DFACS received reports that the children were not supervised, that they had no toilet facilities, that they had sores on their bodies, and that they were begging for food. Melissa Moore failed to comply with the case plan goals. Melissa Moore failed to pay the court-ordered child support. She refused to submit to drug screens and admitted that she had used cocaine as recently as June 1998, only a few months before the termination hearing, and at a time when she was pregnant. A.N.M. testified Benjamin Moore sexually molested her when she was eight years old and continued to do so until she was thirteen. Melissa Moore testified that she did not believe Benjamin Moore abused A.N.M.
Melissa Moore was incarcerated several times while her children were in DFACS' custody. She had been arrested and jailed for theft, theft by receiving stolen property, *551 illegal loitering for sex, possession of cocaine, and obstruction of a police officer. Melissa Moore admitted that she was a cocaine addict and that she needed additional therapy. She failed to retain permanent employment and failed to obtain adequate housing for herself and her children. Additionally, she did not visit her children on a regular basis, seeing them only once in the five months prior to the hearing.
(c) The record also supports a finding that the children's deprivation would be likely to continue under Melissa Moore's care.
Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. The court was entitled to infer from the evidence that, despite the best efforts of DFACS and many other social workers and charities, the same pattern of deprivation would continue [if] the children were reunited with their mother.
(Punctuation omitted.) In the Interest of R. N., supra at 204(1)(c), 480 S.E.2d 243. In this case, Melissa Moore was given numerous chances to modify her behavior, both before and after she lost custody of her children. However, even after years of effort by DFACS, she has failed to find permanent employment, establish a stable home for her children, remain drug free, stay out of jail, or satisfy the other goals of her reunification plan.
(d) The juvenile court's finding that the children would likely be harmed by the continued deprivation is also well founded. As Melissa Moore had a history of neglecting her children, exhibited no effort to attain reunification, and failed to comply with DFACS' case plan, the evidence is clear and convincing that reuniting these children with Melissa Moore would cause harm to them.
(e)
Finally, the record supports a finding that the best interests of the children are served by termination of [Melissa Moore's] rights. The same factors which show [her] inability to rear her children may also provide evidence that termination of her rights would be in the best interests of her children.
In the Interest of D.W., 235 Ga.App. 281, 283, 509 S.E.2d 345 (1998). Although Melissa Moore contends that she can effectively parent her four minor children and unborn baby, the outcome of her appeal does not change. "`[T]he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.'" In the Interest of D.I.W., 215 Ga.App. 644, 646(1), 451 S.E.2d 804 (1994). Therefore, the termination of Melissa Moore's parental rights is affirmed.
Case No. A99A0721
2. Benjamin Moore enumerates several errors regarding the trial court's decisions concerning surrenders for adoption that were signed by him and his wife.
The record indicates that the termination hearing was held on August 20, 1998; however, the court left the record open to allow Benjamin Moore to obtain his psychiatrist's deposition. The final hearing was held on September 30, 1998. On August 31, 1998, both Benjamin and Melissa Moore executed documents surrendering their parental rights in favor of an adoption by John and Jane Moore, the paternal grandparents. By letter, dated September 3, 1998, Melissa Moore withdrew her surrender of rights.
(a) Benjamin Moore contends that Melissa Moore's withdrawal was invalid because she did not follow the specific provisions of the law. OCGA § 19-8-26 allows for the withdrawal of a surrender of parental rights by giving written notice, delivered in person or mailed by registered mail, to the person listed in the surrender form within ten days from the date the surrender form is signed. In the present case, Melissa Moore's attorney wrote a letter to Richard Watkins, the person listed in the surrender form, within ten days from the date the surrender of parental rights was signed, indicating that Melissa Moore was incarcerated and that she had requested that her attorney withdraw the surrender of parental rights on her behalf. Benjamin Moore contends that the *552 withdrawal was ineffective because it was not delivered in person or by registered mail. The evidence shows that the correct person timely received written notice of Melissa Moore's withdrawal of her surrender of parental rights. While Benjamin Moore correctly argues that the statutes governing the surrender of parental rights and adoption must be strictly construed, such statutes are construed in favor of the surrendering biological parent. See Johnson v. Eidson, 235 Ga. 820, 821, 221 S.E.2d 813 (1976). Therefore, the trial court did not err in recognizing the validity of Melissa Moore's withdrawal of her surrender of parental rights.
(b) Benjamin Moore asserts that the juvenile court erred in denying his motion to dismiss based on the surrenders of parental rights. He argues that the juvenile court lost jurisdiction to terminate his parental rights after he voluntarily surrendered them in favor of an adoption. This argument fails to consider that the adoption could not take place after the biological mother validly withdrew her surrender of parental rights. Furthermore, the trial court specifically found that the Moores had executed the surrenders of parental rights for the purpose of thwarting the anticipated termination of their parental rights. After a finding of subterfuge, "nothing would preclude the court from proceeding with the termination-of-parental-rights hearing." Skipper v. Smith, 239 Ga. 854, 857(2), 238 S.E.2d 917 (1977).
3. Benjamin Moore also contends that the trial court erred in refusing him a copy of the psychological profiles of himself and his children. The record reveals that the juvenile court did order that such reports be made available to Benjamin Moore if DFACS intended to use them in the termination proceeding. Additionally, the court also agreed to review the evaluations in camera and produce any evidence which it considered "analogous to exculpatory information or information [it thought] would be favorable ... or harmful to [Benjamin Moore] if it were not disclosed." Although the juvenile court did not further address this issue, there is no evidence that the trial court did not complete its in-camera inspection. DFACS did not use the psychological reports during the termination hearing. Therefore, the juvenile court did not abuse its discretion in refusing to allow the discovery of the unused psychological reports. See In re C.M., 179 Ga.App. 508, 509(1), 347 S.E.2d 328 (1986) (juvenile court did not abuse its discretion in refusing to allow discovery of caseworker-generated documents not used in termination proceeding).
4. Benjamin Moore further contends that the juvenile court erred by basing its decision on the findings and recommendations of two citizens review panel reports which contained hearsay. However, there is no evidence that the juvenile court relied on any hearsay contained in the reports. Furthermore, it is very clear that the juvenile court made its own factual findings based on the evidence before it, unlike the court in In the Interest of M.L.P., 231 Ga.App. 223, 498 S.E.2d 786 (1998), relied upon by Benjamin Moore. Therein we determined that the juvenile court erred by failing to make its own independent factual findings and in relying almost exclusively on the findings contained in the citizens review panel reports. Id. The present case is distinguishable from In the Interest of M.L.P. The trial court did not err in allowing the subject reports into evidence.
5. Benjamin Moore contends that the termination of his parental rights was not based on clear and convincing evidence. In addition to the evidence outlined in Division 1, the record reveals that A.N.M. testified that Benjamin Moore began molesting her when she was nine or ten years old. She testified that he fondled her breasts, penetrated her vagina with his fingers, and placed his penis on her vagina. Benjamin Moore asked A.N.M. to "suck his penis" which she refused to do. A.N.M. acknowledged that she had recanted the allegations in the past, but she explained that she recanted because she did not want to be separated from her mother and siblings; she also testified that her recantation was false. Benjamin Moore testified that he did not molest A.N.M. He also acknowledged that he did not participate in sexual offender counseling as required by the case plan goals.
Benjamin Moore tested positive for cocaine in April, June, October, and December 1997. *553 Although Benjamin Moore completed a substance abuse treatment program in March 1998, he relapsed and tested positive for cocaine in June 1998. Although he received social security disability income and was working part time, Benjamin Moore failed to make the child support payments required by DFACS. He also failed to obtain independent housing.
Benjamin Moore did comply with some of his case plan goals: he completed a parenting program in March 1998, and he visited the children regularly. However, in September 1997, the juvenile court had terminated visitation between Benjamin Moore and B.C.W.M. because the child indicated that he was afraid of Benjamin Moore.
This evidence supports the juvenile court's determination that Benjamin Moore's inability to adequately care for his children was the cause of their deprivation and that such deprivation was harmful and was likely to continue. See In the Interest of V.S., supra; In the Interest of R.N., supra; In the Interest of D.W., supra. The evidence also supports the juvenile court's finding that termination of Benjamin Moore's parental rights was in the best interest of the children. See In the Interest of R.N., supra. Therefore, the juvenile court did not err by terminating Benjamin Moore's parental rights.
Judgments affirmed.
BARNES, J., and Senior Appellate Judge HAROLD R. BANKE concur.
NOTES
[1] The biological father of A.N.M. does not appeal the termination of his parental rights.