## S04A0419. WALLS et al. v. WALLS et al.

(599 SE2d 173)

HINES, Justice.

This Court granted an interlocutory appeal in this divorce case to determine whether the adult adoption of John Walls by Cathy L. Conner operated to terminate the intervention of his parents in the custody determination concerning his child. Finding that it did not, we reverse.

John Walls, now known as John Conner ("Conner"), was adopted as a minor by Robert and Sherry Walls (the "Wallses") in 1974. In 1998, Conner married Sharon Williams, now Sharon Walls; the marriage produced one minor child. On May 1, 2002, Conner (then still known as John Walls) filed for divorce from Sharon Walls in the Superior Court of Henry County. The elder Wallses moved to intervene in the divorce action, as paternal grandparents under OCGA § 19-7-1 (b.1), seeking temporary and permanent custody of the child. The Wallses alleged that they had been the primary care givers for the child, and had held temporary guardianship over her since 1998.

The motion to intervene was granted, and the trial court awarded the elder Wallses temporary custody on July 9, 2002.[1] On February 5, 2003, Conner was adopted by his biological mother, Cathy L. Conner, by an adult adoption decree of the Superior Court of Fulton County. See OCGA § 19-8-21.[2]

John Conner then moved in the divorce court to: (1) set aside the order allowing the Wallses to intervene; (2) set aside the award of temporary custody to the Wallses; and (3) dismiss the Wallses' complaint for change of custody. Conner argued that the adult adoption decree severed all legal relationships between the Wallses and the child; because the Wallses were no longer his legal parents, they were no longer legally the grandparents of his child. The trial court agreed, and entered an interlocutory order, ruling that the Wallses were no longer the child's legal grandparents, dismissing their intervention and all associated pleadings in the divorce action, setting aside the award of temporary custody to the Wallses, and awarding temporary custody of the child to Conner. The trial court also issued a certificate of immediate review and this Court granted the Wallses' application for an interlocutory appeal. See OCGA § 5-6-34 (b).

---

[1] The correctness of this ruling is not at issue.

[2] It does not appear that the Wallses, Sharon Walls, or the child, were joined in, or notified of, the Fulton County adoption proceeding.

The Wallses intervened in the custody dispute in this divorce action under the authority of OCGA § 19-7-1 (b.1), which allows a court to grant custody of a minor to certain third party non-parents, including the grandparents of that minor.[3] Conner argues that the Wallses are no longer the grandparents of his daughter, and therefore can no longer seek custody of her under OCGA § 19-7-1 (b.1). He relies upon OCGA § 19-8-21 (b), which states that OCGA § 19-8-19 applies to an adult adoption. That Code section provides in part that:

> . . . a decree of adoption terminates all legal relationships between the adopted individual and his relatives, including his parent, so that the adopted individual thereafter is a stranger to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship. . . .

OCGA § 19-8-19 (a) (1). Conner contends that under this Code section, not only is the familial link between him and the Wallses broken, but so is the link, through him, between the Wallses and his daughter, as they are not her "grandparents."[4] Thus, he urges, they are not in the list of persons who can intervene under OCGA § 19-7-1 (b.1) in the divorce custody matter.

However, this argument ignores the fact that the intervention, and a court order granting temporary custody, have already occurred. And because of that fact, even if it is assumed that OCGA § 19-8-19 (a) (1) operates so as to affect relationships other than those of the adoptee, the specific statutory language of the Code section would exclude this situation from the operation of that statute. Under OCGA § 19-8-19 (a) (1), an adoption does not affect those "documents" and "instruments" which "expressly include the individual by name." Here, the individual at issue, the child,[5] is specifically named in the

---

[3] Those third parties are "limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent. . . ." OCGA § 19-7-1 (b.1).

[4] In advancing this argument, Conner relies upon the definition of "grandparent" found in OCGA § 19-7-3 (a); "the parent of a parent of a minor child, the parent of a minor child's parent who has died, and the parent of a minor child's parent whose parental rights have been terminated." However, OCGA § 19-7-3 (a) states that this definition of "grandparent" applies as the term is "used in this Code section." Because of our analysis based upon the language of OCGA § 19-8-19 (a) (1), we need not determine whether the definition found in OCGA § 19-7-3 (a) applies to OCGA § 19-7-1 (b.1).

[5] OCGA § 19-8-19 (a) (1)'s language concerning the inclusion of "the individual by name" apparently refers to the adopted individual. But, as Conner attempts to have the statute apply

petition for intervention under OCGA § 19-7-1 (b.1), and in the court's interlocutory custody order.[6] Thus, Conner's argument must fail; OCGA § 19-8-19 (a) (1) cannot be read to extinguish the legal status that the Wallses held in this case.[7]

*Judgment reversed. All the Justices concur, except Fletcher, C. J., and Hunstein and Carley, JJ., who concur specially.*

CARLEY, Justice, concurring specially.

I agree that the trial court erred in dismissing the motion to intervene filed by Mr. and Mrs. Walls (Grandparents) in John Conner's divorce action, and in setting aside the award to them of temporary custody of his child. I do not, however, agree with the rationale used by the majority to arrive at that result.

Resolution of this case is controlled by OCGA § 19-8-19 (a) (1), which provides, in relevant part, that

> a decree of adoption terminates all legal relationships between the adopted individual and his relatives, including his parent, so that the adopted individual thereafter is a stranger to his former relatives for all purposes, including inheritance and the interpretation or construction of documents, statutes, and instruments, whether executed before or after the adoption is decreed, which do not expressly include the individual by name or by some designation not based on a parent and child or blood relationship . . . .

Relying on this provision, John Conner contends that, by arranging for his own adult adoption, he not only terminated his own direct relationship with Grandparents, but that he also vicariously defeated their legal efforts to obtain custody of his child. Compare *Echols v. Smith*, 207 Ga. App. 317 (427 SE2d 820) (1993) (adoption of grandchild terminates grandparent's visitation rights); *Campbell v. Holcomb*, 193 Ga. App. 474 (388 SE2d 65) (1989) (adoption of grandchild terminates grandparent's visitation rights). The trial court agreed with his interpretation of the scope of the statute. The majority reverses, concluding that,

---

with the same effect to his daughter, the policy would remain the same; those relationships that are recognized and memorialized by identifying individuals by name, rather than by reference to a more general relationship, will not be affected by the adoption.

[6] Because the statute does not operate as to those documents which identify a person by name, the statute's statement that it affects those documents executed prior to the adoption does not apply in this instance.

[7] Given our resolution of this case, we need not determine whether OCGA § 19-8-19 (a) (1)'s statement that all legal relationships between an adopted person are terminated so that he is "thereafter a stranger to his former relatives" will operate, as a general matter, to terminate those relationships that are calculated *through* the adopted person.

[u]nder OCGA § 19-8-19 (a) (1), an adoption does not affect those "documents" and "instruments" which "expressly include the individual by name." Here, the individual at issue, the child, is specifically named in the petition for intervention under OCGA § 19-7-1 (b.1), and in the court's interlocutory custody order. Thus, . . . OCGA § 19-8-19 (a) (1) cannot be read to extinguish the legal status that the [Grandparents] held in this case.

Majority opinion, pp. 207-208.

The fallacy that I perceive in the majority's analysis is that, under its express wording, OCGA § 19-8-19 (a) (1) applies only to those "documents" and "instruments" which have been "executed." To "execute," when used in connection with such terms, means "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form . . . ." Black's Law Dictionary, p. 589 (7th ed. 1999). Pleadings and orders are filed, not executed. To "file" means "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record . . . ." Black's Law Dictionary, p. 642 (7th ed. 1999). Thus, I believe that OCGA § 19-8-19 (a) (1) uses "documents" in the limited sense of "deeds, agreements, title papers, letters, receipts, and other written instruments used to prove a fact[,]" whereas "instruments" refers only to those "written legal document[s] that define[] rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." Black's Law Dictionary, pp. 498, 801 (7th ed. 1999). Such writings are subject to "interpretation or construction" by the courts, but they are not constituent components of the judicial process itself. Thus, I disagree with today's opinion, to the extent that it constitutes authority for construing "documents" and "instruments" as inclusive of pleadings and orders. Had the General Assembly intended such an expansive application of OCGA § 19-8-19 (a) (1), it would have used those judicial terms and would not have limited "documents" and "instruments" to those which were "executed."

In my opinion, the proper focus in the interpretation of OCGA § 19-8-19 (a) (1) should not be on "documents" and "instruments," but on whether the termination of Grandparents' relationship with Conner's child is one of the "purposes" the statute contemplates that the decree of adoption can serve. Adoption is a right which did not exist at common law, and is statutory in origin. *Johnson v. Eidson*, 235 Ga. 820, 821 (221 SE2d 813) (1976). A statute should be read in accordance with the natural and obvious import of its language. *State v. Johnson*, 269 Ga. 370, 371 (1) (499 SE2d 56) (1998). As previously noted, OCGA § 19-8-19 (a) (1) provides that an adoption decree "terminates all legal relationships between the adopted individual

and *his* relatives, including *his* parent, so that the adopted individual thereafter is a stranger to *his* former relatives for all purposes . . . ." (Emphasis supplied.) Thus, by its express language, OCGA § 19-8-19 (a) (1) evinces a legislative intent to limit its applicability to severance of the familial relationships of the adoptee only. The courts should not give the statute a forced construction so as to extend its scope of operation beyond that intended by the General Assembly. See *State v. Johnson*, supra.

Moreover, this precise statutory wording was construed in *Worley v. Worley*, 534 S2d 862 (Fla. App. 1988), where, as here, a father urged that his own adult adoption not only terminated the relationship between himself and his parents, but also ended the relationship between his child and his parents. While not controlling on this Court, that decision constitutes persuasive authority in construing our identical Georgia statute. See *Mitchell v. Union Bag & Paper Corp.*, 75 Ga. App. 15, 19 (42 SE2d 137) (1947). The Florida court rejected the father's claim, concluding that he was "effectively arguing that, since he was adopted, any [of his] children are automatically adopted as well." *Worley v. Worley*, supra at 863-864. The rationale for this holding was that the adoption of the children was an entirely separate and distinct issue from the adoption of their father.

> [A] child such as the one herein is not only the descendant of the adopted parent, but of the other parent as well. No judgment of adoption of a minor, so that the severance argued for herein could occur, can be granted unless written consent has been executed after the birth of the minor by the mother and in most cases the father. [Cit.] There is absolutely no evidence that any such consent was executed herein or indeed that adoption of the minor child was ever at issue. Therefore, the "automatic" adoption effectively argued by the [father] as a legal result of his own adoption cannot occur.

*Worley v. Worley*, supra at 864.

The same rationale would apply under Georgia law. See OCGA § 19-8-4 et seq. (surrender or termination of parental or guardian's rights as condition precedent to adoption). The adoption of Conner's child and the consequent termination of the child's relationship with Grandparents was not an issue in the proceeding wherein Conner was adopted. Accordingly, the "automatic" adoption of his child that he contends was accomplished vicariously by virtue of his own adoption could not occur.

Conner urges that the *Worley* case is distinguishable because the grandparent there, unlike here, was the natural parent of the adoptee and, thus, had a biological connection with the grandchild.

However, that is a distinction without a difference. At the time his adult adoption proceeding was initiated, both Conner and his child had the equivalent of a biological relationship with Grandparents. OCGA § 19-8-19 (a) (2). His subsequent adoption may have terminated his legal relationship with Grandparents, but it did not affect the legal relationship between his child and Grandparents, notwithstanding the absence of an actual biological relationship between them.

> [I]n cases such as the one herein, when the child is born while his father was still a lineal descendant of his . . . [G]rand-[parents], the child was born a lineal descendant of his . . . [G]rand[parents] and, as pointed out above, no judgment has operated on him, with the statutorily required consent of his parents, to sever that tie in favor of an adoptive family.

*Worley v. Worley*, supra at 864.

Therefore, I submit that the proper construction and application of OCGA § 19-8-19 (a) (1) results in the termination of Conner's legal relationship with Grandparents, but the termination of Grandparents' legal relationship with the child is beyond the scope of the Code section. For that reason, I concur in the judgment of reversal of the trial court's order which improperly construed the statute.

I am authorized to state that Chief Justice Fletcher and Justice Hunstein join in this special concurrence.

DECIDED JULY 12, 2004.

*William W. West, Martin C. Jones*, for appellants.
*W. Donald Patten, Jr., Josie Redwine*, for appellees.