A95A2023. IN THE INTEREST OF B. J. et al., children.
(469 SE2d 313)

McMURRAY, Presiding Judge.

In this appeal from an order of the juvenile court terminating the parental rights to three minor children, the appellant mother enumerates two errors. Only the mother pursued this appeal; the father voluntarily relinquished his parental rights.

The evidence presented at the parental rights termination hearing revealed the following: From 1986 until 1992, the Department of Family & Children Services ("DFCS") maintained ongoing supervision of the family. During this time, the youngest child, M. J., was twice removed because he was not receiving proper care and feeding.[1] Caseworkers reported that the children were dirty and had head lice, M. J. drank from soured bottles and often did not receive his first feeding until mid-afternoon when his mother awoke, and the house was roach infested and filthy. With at least weekly supervision, conditions improved to the point that M. J. was returned to the family in early 1989.

In May 1992, however, the oldest child, 11-year-old B. J., reported to DFCS that he had been sexually abused by his adult male neighbor, who had purportedly exposed himself and shown the child pornographic movies. DFCS and the parents developed a written protection plan which explicitly provided that the parents would not permit any contact between the children and the neighbor or an uncle who allegedly had exposed the children to sexually explicit videos. However, in October 1992, the Gwinnett County Police Department informed DFCS that B. J. had been sexually abused by the neighbor.

DFCS then sought an emergency hearing seeking temporary custody of the children. At the hearing, DFCS presented evidence that the neighbor had orally and anally sodomized B. J. and had shown

---

[1] M. J. was approximately three months old when he was first removed from the family home.

him pornographic movies, B. J. had been drawing sexually explicit pictures at school, the parents allowed him to spend the night on more than one occasion with the abuser, and the youngest child had been in the same neighbor's home and may have been molested.[2] In addition, there were allegations that an uncle had had sexual contact with the female child, K. J., and the parents had been present when the children had watched pornographic movies with the uncle. The children were adjudicated as deprived and the parents as unfit. DFCS was awarded temporary custody and the parents received no visitation rights. Although the parents were notified of this hearing, they did not attend.

The parents then moved to Tennessee. In November 1992, the father withdrew the children from school and took them to Tennessee. He returned them to his attorney days later and was arrested for interference with custody.

A subsequent consent order on the matter indicated that B. J. had witnessed his parents having sex with their knowledge. In the order, the parents agreed to complete psychological evaluations, participate in parenting skills classes, and pay child support of $10 per week. The order also permitted parental visitation arranged though DFCS.

Although DFCS designed reunification case plans and notified the parents every six months when their case was reviewed, the parents did not attend the reviews. In addition, the parents failed to comply with the case plan, pay child support, participate in parenting skills classes, or to be psychologically evaluated even after they were held in contempt of court for failure to submit to psychological evaluations. Neither parent has contacted the children since October 1992, although they made two unsuccessful efforts to arrange a visit in the summer of 1993. The first time, they appeared at the DFCS office in late afternoon and requested a visit the same day. The second time a visit was arranged and the children were transported to the DFCS office, but the parents never arrived due to car trouble.

After considering this evidence, the trial court found clear and convincing evidence that the children were deprived and that parental misconduct or inability caused the deprivation. *Held*:

1. The mother challenges the sufficiency of the evidence that any deprivation suffered by her children would likely continue or would not likely be remedied.

In considering the termination of parental rights, a juvenile court must ascertain whether there is clear and convincing evidence of parental misconduct or inability. OCGA § 15-11-81 (a). A finding of

---

[2] The neighbor was subsequently convicted of six counts of child molestation.

parental misconduct or inability hinges on evidence that, inter alia, (1) the children are deprived within the meaning of OCGA § 15-11-2; (2) the parent caused the deprivation through lack of proper care or control; (3) the cause is likely to continue or will not likely be remedied; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. OCGA § 15-11-81 (b) (4) (A). The court may consider a parent's past conduct in determining whether the deprivation is likely to continue or will not likely be remedied. *In the Interest of L. F.*, 203 Ga. App. 522 (417 SE2d 344) (1992).

The trial court properly found that the past conduct of the mother was likely to continue and would not be remedied. The record is replete with uncontroverted evidence of past conduct demonstrating the parents' unfitness, as noted above. Although the mother denied knowing that her neighbor had sexually abused B. J. until May 1992, she admitted that she had suspicions about his interest in the children as early as 1990 or 1991. Nevertheless, she accepted the loan of a television from him, and permitted the children to go to dinner with him. After signing the written agreement to protect the children from unsupervised visits with the neighbor, she permitted B. J. to spend the night with him on several occasions. In the case sub judice, the evidence of the mother's past failures to protect and support her children justifies the trial court's finding.

2. The mother argues that the trial court should have granted an order of temporary custody rather than taking the extreme measure of terminating her parental rights.

The evidence was clearly sufficient to authorize termination of the mother's parental rights. No other factors warrant reconsideration of the trial court's disposition. In *Jones v. Dept. of Human Resources*, 168 Ga. App. 915 (310 SE2d 753) (1983) we questioned whether permanent severance of parental rights was appropriate due to evidence that the severely mentally dysfunctional parents loved their child and sincerely wished to provide him with adequate care. The record in the case sub judice does not support a finding that the mother shares such aspirations.

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED FEBRUARY 9, 1996.

*Rich & Smith, Randolph G. Rich*, for appellant.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Teresa E. Lazzaroni,*

*Assistant Attorneys General, Kathryn C. Reeder,* for appellees.