A97A0053. IN THE INTEREST OF M. L. et al., children.
(488 SE2d 702)

McMURRAY, Presiding Judge.

This is a termination of parental rights proceeding grounded on parental misconduct or inability. OCGA § 15-11-81 (b) (4) (A). The mother appeals the juvenile court judgment of termination of her parental rights, contending that the evidence is insufficient to satisfy the applicable standard of proof that a rational trier of fact could find clear and convincing evidence that her rights to custody have been lost. *Held*:

1. "Pursuant to OCGA § 15-11-81 (a), a juvenile court deciding whether to terminate a parent's rights employs a two-prong test, first determining whether there is 'clear and convincing evidence of parental misconduct or inability.' For purposes of this case, a finding of 'parental misconduct or inability' must rest on clear and convincing evidence showing: 1) that the child is deprived; 2) that the cause of the deprivation is a lack of proper parental care or control; 3) that the cause of the deprivation is likely to continue or will not likely be remedied; and 4) that the continued deprivation is likely to cause physical, mental, emotional, or moral harm to the child. OCGA § 15-

11-81 (b) (4) (A). If the first prong of the test is met, the trial court then considers whether the termination of parental rights is in the child's best interests." *In the Interest of R. N.*, 224 Ga. App. 202 (480 SE2d 243).

Appellant and these two children initially became involved with the Department of Family & Children Services ("DFCS") in August 1990 when a complaint was received that M. L., then 20 months of age, was wandering unsupervised in the street near appellant's home. At that time and at most times prior to the filing of the petition for termination in January 1996, appellant resided with her mother.

An initial caseworker visit to appellant's home in August 1990 found the home unsafe, unsanitary, and without usable cooking facilities. The children were removed from appellant's custody but returned within a few days as an incentive to encourage a continuation of efforts to clean the home. However, a further home visit a few days later revealed that conditions had been allowed to deteriorate in that trash and clothes were strewn about the home in piles reaching the ceiling, and the kitchen stove was rendered unusable due to debris stacked on top of it. The children were once again removed from the home and a deprivation petition filed based on the living conditions in the home, the failure to supervise M. L., and upon the history of appellant's mother who had a record of physical neglect and abuse of her own children.

Thereafter, a succession of reunification plans were developed. The common themes reflected in these reunification plans required an improvement in the living conditions in appellant's home and the acquisition by appellant of essential skills for independent living and for child care. While there is some evidence that appellant was at least sporadically motivated and successfully completed some portions of the reunification plans, the overall environment appellant was able to provide for the children was never sufficient to permit the return of these two children to her custody. Meanwhile, three younger children were removed from appellant's custody.

Appellant was born deaf and communicates primarily through the use of a non-standard sign language. Nonetheless, appellant was provided with sign language interpreters in many instances, and communication was accomplished by handwritten notes in others. While there may have been some failures to communicate effectively with appellant and the record shows specific instances in which the value of the services provided by DFCS was diminished by the absence of an interpreter, on balance the record shows that the communication problems were adequately addressed and that extensive services were provided to appellant over a five-year period designed to enable her to reunite with these children. There is evidence of

some recent improvement in the appellant's circumstances, particularly since the filing of the termination petition. Nonetheless, the evidence sufficiently supports the juvenile court's order and judgment terminating appellant's parental rights as to these two children.

In examining the four parts of the test for parental misconduct or inability, we find that appellant has explicitly conceded the first two issues, that is, appellant admits that the children were deprived when taken from her custody and that the cause of that deprivation was a lack of proper parental supervision and control. These admissions are corroborated by evidence presented during the termination hearing.

Addressing the question of whether there is clear and convincing evidence that the cause of the deprivation is likely to continue or will not likely be remedied, we note that appellant remains unable to demonstrate adequate parenting skills or any substantial capability for independent living. The director of a parenting skills program, in which appellant had recently participated with the aid of an interpreter, opined that appellant did not appear prepared to care for the children because she did not appear to understand the complexity of the children's needs and what was required to properly care for them. The program director also referred to appellant's low scores on an objective comprehension questionnaire and her lack of questions or participation in discussions during the parenting program. Although a DFCS community worker who had some knowledge of appellant's circumstances opined that appellant could acquire the ability to care for the children if accomplished gradually over a period of two or more years and with the continued extensive assistance of extensive services provided by DFCS, this optimism finds little support in appellant's past conduct. Appellant has visited sporadically with the children, appearing for more than one-half of the scheduled visits but not infrequently skipping scheduled visits without any communication to the children or DFCS. Visits to appellant's residence by the children were terminated after they both were injured in the course of such visits. During the time that the children have been in DFCS custody, appellant has not provided any support or gifts for the children.

During a lengthy recess in the termination hearing, appellant married and now lives in an apartment she shares with her husband. During most of appellant's involvement with DFCS, she had continued to share her mother's home, except for brief intervals, and it was usually the mother's home where DFCS found the extremely unsanitary conditions which were not remedied. In contrast, DFCS has inspected appellant's present apartment and found that the cleanliness of this residence is not an issue and that it would be adequate for the children. Nonetheless, the juvenile court was authorized to

infer from the evidence of past conduct that it is unlikely that appellant will be able to sustain the improvements in her residence environment. *In the Interest of R. N.*, 224 Ga. App. 202, 204 (1) (c), supra; *In the Interest of B. J.*, 220 Ga. App. 144, 146 (1) (469 SE2d 313). Appellant had moved from her mother's home on three prior occasions, and in each instance appellant returned to reside in her mother's home within a brief period of time. The evidence sufficiently supported the juvenile court's finding that the deprivation is likely to continue.

The record also sufficiently supports the juvenile court's fourth finding, that the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the children. The deprivation is of such a nature as to naturally cause injury to the children. *In the Interest of J. R.*, 202 Ga. App. 418 (414 SE2d 540). Additionally, a psychologist who evaluated the children testified that R. L. had developmental problems involving speech and language and M. L. appeared to have some depression and to be experiencing situational stress.

2. "[T]he same factors which show parental inability may also show that termination would be in the children's best interest. *In the Interest of G. K. J.*, 187 Ga. App. 443, 444 (2) (370 SE2d 490) (1988). Although the mother contends she has now changed, judging the credibility of her good intentions was a task for the juvenile court. '(T)he decision as to a child's future must rest on more than positive promises which are contrary to negative past fact.' (Citation and punctuation omitted.) [*In the Interest of*] *D. I. W.*, [215 Ga. App. 644, 646 (451 SE2d 804)]." *In the Interest of R. N.*, 224 Ga. App. 202, 205 (2), supra. Additionally, the juvenile court was authorized to consider the children's need for a stable home situation and the detrimental effects of prolonged foster care. *In the Interest of M. R.*, 213 Ga. App. 460, 464 (1) (b) (444 SE2d 866). There was evidence that the children were very bonded with their foster mothers who desired to adopt them. The juvenile court did not err in terminating the parental rights of the mother to these two children.

*Judgment affirmed. Beasley and Smith, JJ., concur.*

DECIDED JULY 3, 1997.

*Carla J. Friend*, for appellant.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney*

*General, Rubin, Winter, Rapoport & Hall, Robert E. Hall*, for appellee.