534 S.E.2d 442 (2000)
243 Ga. App. 707
In the Interest of M.C., a child.
No. A00A0926.
Court of Appeals of Georgia.
April 26, 2000.
Certiorari Denied October 20, 2000.
*443 Regina E. McMillan, College Park, for appellant.
Thurbert E. Baker, Attorney General, Dennis R. Dunn, Deputy Attorney General, William C. Joy, Senior Assistant Attorney General, Shalen A. Sgrosso, Assistant Attorney General, Thomas B. Hammond, for appellee.
McMURRAY, Senior Appellate Judge.
Freddy Gresham appeals the termination of his parental rights, contending the evidence was insufficient to support a finding of present parental misconduct or inability to provide for his child, M.C. Held:
1. The evidence was sufficient to support the termination. The standard of review applicable to a juvenile court's decision to terminate parental rights is "whether after reviewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost." (Citations and punctuation omitted.) In the Interest of A.C., 230 Ga.App. 395, 396(1), 496 S.E.2d 752.
In reviewing the juvenile court's decision, "`[t]his Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's factfinding and affirm unless the appellate standard is not met. [Cit.]'" In the Interest of S.N.N., 230 Ga.App. 109, 495 S.E.2d 602.
OCGA § 15-11-81(a) sets out a two-part test that the juvenile court must apply in determining whether to terminate a parent's rights. First, the court must find "present clear and convincing evidence of parental misconduct or inability." Second, the court must decide whether such termination would be in the best interest of the child. In the Interest of V.S., 230 Ga.App. 26, 27, 495 S.E.2d 142.
Four factors must be demonstrated as a prerequisite to finding parental misconduct or inability: (1) the child is deprived; (2) lack of proper parental care or control is causing the deprivation; (3) the cause of the deprivation is likely to continue or will not likely be remedied; and (4) continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. In the Interest of A.N.M., 238 Ga.App. 21, 22(1), 517 S.E.2d 548; OCGA § 15-11-81(b)(4)(A).
We will discuss these factors seriatim.
(a) The evidence of deprivation is clear, convincing, and overwhelming.
A caseworker with the Wilkes County Department of Family & Children Services ("DFACS") testified at the hearing that on August 5, 1997, M.C. and his older brother, T.C., who lived with their mother,[1] had been locked out of their home all day without food. They were dirty, hungry, and disheveled, and T.C. had had a confrontation with his mother. This event capped three years of neglect by their chronically alcoholic mother. On August 22, the juvenile court found the children were deprived and awarded temporary custody to DFACS. M.C., who was then seven years old, was placed in a foster home. DFACS also drew up a plan to reunite the natural mother and children.
*444 Gresham apparently did not learn that he was M.C.'s father until January 1998, when he contacted DFACS and requested a paternity test. Gresham was ordered to pay child support effective July 1. On August 19, 1998, the juvenile court entered a second deprivation order, finding that it was in M.C.'s best interest to remain in foster care. Gresham was personally served with notice of the hearing but failed to appear. Nor did Gresham appeal the deprivation order; thus, he is bound by its finding.[2]In the Interest of L.H., 236 Ga.App. 132, 134(1), 511 S.E.2d 253. Finally, Gresham concedes on appeal that M.C. was deprived.
(b) Similarly, we agree with the juvenile court's finding that the lack of Gresham's proper parental care or control is a significant factor contributing to M.C.'s deprivation.
In determining whether a lack of proper parental care and control exists, the court may consider several factors, including the following:
excessive use of or history of chronic unrehabilitated abuse of intoxicating liquors or narcotic or dangerous drugs or controlled substances with the effect of rendering the parent incapable of providing adequately for the physical, mental, emotional, or moral condition and needs of the child; [and] conviction of the parent of a felony and imprisonment therefor which has a demonstrable negative effect on the quality of the parent-child relationship.
In the Interest of J.H., 240 Ga.App. 309, 310, 523 S.E.2d 374; OCGA § 15-11-81(b)(4)(B)(ii), (iii).
The juvenile court properly considered Gresham's seven convictions of violating the Georgia Controlled Substances Act from 1990 through 1992, which were based on his sale and possession of cocaine. Gresham's parole officer testified that Gresham has been arrested four times since 1994 for parole violations and is not scheduled to be released from parole until 2007. The arrests have been based on Gresham's alcohol and drug use, changing residences without permission, and stealing his wife's car.[3] At the time of the hearing, Gresham was in an inpatient drug rehabilitation program, with no set release date.
Gresham contends that his "enrollment" in the drug rehabilitation program shows that he is not presently unfit to parent. We disagree. While Gresham claimed he was becoming sober to enable him to care for his child, Gresham's parole officer testified that his placement in the program was essential to avoid parole revocation and incarceration.
Gresham's initiative to establish his paternity may well indicate his sincere desire for a relationship with M.C., but the fact that the original termination hearing had to be continued because Gresham was in jail for absconding with his new bride's car spoke volumes about his present misconduct and inability to care for M.C.
Although [Gresham] contends that he has now changed, "judging the credibility of (his) good intentions was a task for the juvenile court. The decision as to a child's future must rest on more than positive promises which are contrary to negative past fact." (Punctuation omitted.) In the Interest of M.L., 227 Ga.App. 114, 117(2), 488 S.E.2d 702 (1997).
In Interest of K.A.C., 229 Ga.App. 254, 257(3), 493 S.E.2d 645.
Moreover, Gresham admitted on cross-examination that he could not provide for M.C. He testified that his mother was willing to take custody of the child. However, Gresham's mother did not attend the hearing, so this testimony was hearsay. Also, Gresham's mother never visited the child or provided any support, according to the report of the guardian ad litem.
In addition to the factors set out above, in determining the sufficiency of the evidence of parental misconduct or inability, the juvenile *445 court was required to consider whether Gresham paid court-ordered child support or bonded with M.C. in a meaningful, parental manner during the year before the termination petition was filed, on August 11, 1999.[4]
The record reveals that Gresham has visited the child only once in foster care, on February 1, 1999. He failed to contact DFACS to set up any more visits and did not keep DFACS apprised of his address, frustrating DFACS' attempt to contact him to arrange additional visits. He admitted that he did not attempt to communicate with the child in any way. Gresham also admitted he has not established a parental bond with M.C. His incarcerations for parole violations continue to keep him from forming that bond. Also, the guardian ad litem's report indicated that Gresham resided in the same county as the foster parents prior to his most recent incarceration and did not attempt to contact the child.
Gresham was ordered to pay $245 per month in child support beginning July 1, 1998. He paid nothing until he was held in contempt in November, after which he remitted $980. Gresham has paid no more child support.
Thus, although Gresham paid some child support, the evidence demonstrates that he failed to develop a parental bond with M.C.
(c) The evidence supports the juvenile court's finding that absent termination of Gresham's rights, the deprivation is likely to continue.
A parent's past conduct is relevant to whether the conditions of deprivation are likely to continue. In the Interest of C.W.D., 232 Ga.App. 200, 204(1), 501 S.E.2d 232. The guardian ad litem, who recommended termination, saw little chance that Gresham would be able to take custody of M.C. in the near future based on Gresham's history of incarceration and drug abuse.
Further, Gresham testified that he would be required to reside in a halfway house during the second phase of his drug rehabilitation program. Gresham also testified that he did not plan to return to the county of the child's residence upon his release from the drug rehabilitation program.
Gresham argues that his efforts at rehabilitation demonstrate that M.C.'s deprivation will likely be remedied. Gresham testified that he is a skilled journeyman electrician and had been offered a job that paid $50,000 per year. The court did not find this latter statement credible, and we defer to its role as factfinder.
(d) The evidence was sufficient to show that continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child.
M.C.'s foster mother testified that M.C. suffers nightmares relating to his parents' alcohol and drug abuse and finds Gresham's failure to contact him hurtful. She believed that the child has feelings of rejection which have caused him to act out. The evidence met the standard required to show that continued deprivation is likely to cause emotional harm to M.C. See In the Interest of C.L.R., 232 Ga.App. 134, 138(1)(d), 501 S.E.2d 296.
2. We agree with the juvenile court that termination of Gresham's rights is in the best interest of M.C., considering M.C.'s "physical, mental, emotional, and moral condition and needs ... including the need for a secure and stable home." OCGA § 15-11-81(a).
The guardian ad litem noted that M.C.'s foster home provides a "loving and safe" environment. She also indicated that his *446 foster parents want to adopt him. M.C.'s foster mother testified that his behavior and grades have improved dramatically since joining her family; he has formed a strong bond with her family members and would suffer greatly if he were removed; he has many friends; and she is willing to adopt him. A foster care worker with DFACS rated M.C.'s progress in foster care "excellent." The worker stated that M.C. excels in sports, performs well in school, and gets along well with his foster family.
"[T]he juvenile court was authorized to consider the child['s] need for a stable home situation and the detrimental effects of prolonged foster care." In the Interest of M.L., 227 Ga.App. 114, 117(2), 488 S.E.2d 702. "Moreover, factors indicating parental misconduct or inability can also establish that the termination of parental rights is in the best interest of the child." In the Interest of L.M., 219 Ga.App. 746, 749(2), 466 S.E.2d 887.
We will not consider Gresham's argument, made for the first time on appeal, that the juvenile court erred in failing to attempt to place the child with a suitable relative in accordance with OCGA § 15-11-90(a)(1). Gresham has waived this contention by failing to object in the trial court. In the Interest of K.A.C., supra at 255(2), 493 S.E.2d 645. Even if the issue had been preserved for appellate review, ample evidence was presented to support the juvenile court's finding that no family member was willing or able to assume custody of M.C. Compare In the Interest of C.L.R., supra at 139(3), 501 S.E.2d 296,
"The termination of parental rights is a severe measure. However, a termination hearing seeks above all else the welfare of the child. In determining how the interest of the child is best served, the juvenile court is vested with a broad discretion which will not be controlled in the absence of manifest abuse."
(Citations omitted.) In the Interest of M.L.P., 236 Ga.App. 504, 510(1)(d), 512 S.E.2d 652.
After reviewing the juvenile court's order and the entire record, this Court finds that the trial court did not abuse its discretion in terminating Gresham's parental rights.
Judgment affirmed.
POPE, P.J., and MILLER, J., concur.
NOTES
[1] The juvenile court also terminated the parental rights of M.C.'s mother. Only the father appeals. T.C. is not Gresham's child, was placed with a relative, and was not at issue at the hearing.
[2] A third deprivation order was issued on June 29, 1999, upon DFACS' petition that also sought to terminate parental rights. Gresham was incarcerated on a parole violation at that time so the termination hearing was continued. The hearing which culminated in the termination of Gresham's parental rights was held on October 6, 1999.
[3] Gresham was married on April 2, 1999.
[4] OCGA § 15-11-81(b)(4)(C) provides in relevant part:

where the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider ... whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition ...: (i) [t]o develop and maintain a parental bond with the child in a meaningful, supportive manner; (ii) [t]o provide for the care and support of the child as required by law or judicial decree; and (iii) [t]o comply with a court ordered plan designed to reunite the child with the parent....
See In the Interest of D.A.P., 234 Ga.App. 257, 259(2), 506 S.E.2d 438; In the Interest of K.A.C., supra at 254(1), 493 S.E.2d 645 (factors are considered only if such failure is for a year or longer).