602 S.E.2d 320 (2004)
268 Ga. App. 614
In the Interest of J.G.J.P., a child.
No. A04A1150.
Court of Appeals of Georgia.
July 20, 2004.
*321 Donald Gibson, Brunswick, for Appellant.
Thurbert Baker, Attorney General, Shalen Nelson, Assistant Attorney General, James Chamberlin, Brunswick, for Appellee.
BLACKBURN, Presiding Judge.
Appellant, the natural mother of J.G.J.P., appeals the termination of her parental rights in her child, arguing that there was no clear and convincing evidence supporting the juvenile court's termination of those rights. For the reasons set forth below, we affirm.
The standard of review on appeal from a termination of parental rights is whether, after reviewing the evidence in the light most favorable to the juvenile court's disposition, any rational trier of fact could have found by clear and convincing evidence that the natural parent's right to custody should be terminated. On appeal, this Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the juvenile court's factfinding and affirm unless the appellate standard is not met.
(Citation and punctuation omitted.) In the Interest of K.S.W.[1]
Viewed in a light most favorable to the juvenile court's disposition of this case, the record shows that J.G.J.P. was born on December 7, 2000. In late June 2001, appellant abandoned J.G.J.P. in a taxi so that she could *322 purchase drugs. When appellant did not return after two hours, police responding to the scene took J.G.J.P. to his maternal grandfather and sent a copy of the police report to the Glynn County Department of Family & Children Services (the "Department").
On July 5, 2001, the grandfather's girlfriend called the Department to report that the grandfather was unable to care for J.G.J.P. because of health problems, and that he had left the baby with the maternal grandmother. Because the maternal grandmother had a history of abandoning and neglecting her own children, the Social Services case manager sought an emergency removal of J.G.J.P., and under an Order for Shelter Care, J.G.J.P. was placed in the Department's custody on the same day. At the time of the removal, appellant had still not come forward. In the Interest of K.S.W. supra. On the following day, the Department filed a deprivation petition alleging abandonment.
On July 31, 2001, the Department implemented a reunification plan for appellant. Under the plan, appellant was required to be drug free, obtain stable housing, be employed, learn parenting skills, maintain a relationship with J.G.J.P., and meet his basic needs.
On August 2, 2001, the juvenile court awarded temporary custody of J.G.J.P. to the Department pending an adjudicatory hearing. On August 8, 2001, the juvenile court found that J.G.J.P. was a deprived child, in that he was "without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental or emotional health or morals." On August 10, 2001, the juvenile court incorporated into its order the Department's reunification plan, stating that "[b]efore reunification of the family can be achieved, the court must find that the elements of the plan have been completed sufficiently to remove the risk to the child."
On April 5, 2002, J.G.J.P.'s court appointed special advocate ("CASA") filed a report with the court. The CASA stated:
I visited the Child once in December and he appeared to be flourishing in the Foster Home.... The Mother has had very limited contact with the DFCS Case Manager and has made no progress on her Case Plan. The Mother walked away from a 28-day treatment program after violating program rules. The Mother failed her first (and only) drug test. The Mother does not have a stable home environment. The Mother has not made any visits to the Child. The Mother's whereabouts are not known.
The CASA recommended that the Department retain legal and physical custody of J.G.J.P., and that he remain in foster care. In addition, appellant was to attend and complete a drug rehabilitation program, attend and complete parenting classes, and be allowed visitation as recommended by the Department. Finally, the CASA recommended that the Department initiate termination of appellant's parental rights.
On June 11, 2002, the Department filed a motion for extension of juvenile court order, based on the facts that appellant had not completed any part of her case plan, and that J.G.J.P. had been in temporary custody of the Department since July 5, 2001, and appellant had visited him only four times. The motion also noted that the foster parents were interested in adopting J.G.J.P.
On June 21, 2002, the CASA filed a second report with the court, noting, "The Mother has had one visit with the Child. During that visit, the Foster Parent accompanied the Child because he did not know his Mother. The Mother attempted to interact with the Child, but for the most part the Child clung to the Foster Parent." The report concluded that appellant continued to have minimal contact with the Department, that she did not have reliable employment or stable housing, and that she could not be depended upon to stay in touch with the Department. Again, the CASA recommended that the Department retain legal and physical custody of J.G.J.P., that he remain in foster care, and that the Department seek termination of parental rights.
On July 15, 2002, the juvenile court issued an order on motion for extension/permanency order. The order found that appellant had *323 not availed herself of the services offered by the Department, and had failed to comply with the reunification plan in that she had not visited J.G.J.P. in nine months, and had complied with only one drug screen request. On September 24, 2002, a petition for termination of parental rights was filed with the juvenile court.
The CASA filed a third report on March 3, 2003. According to the report, J.G.J.P. was doing very well and had bonded very well with the foster parents and the other children in the foster home; in addition, the other children had bonded well with J.G.J.P. The report continued:
The Mother has been visiting with the Child, but those visits have always been uncomfortable for the Child. The Child does not want to be left alone with the Mother and always cries/screams when attempts are made to do so. There is absolutely no bond between the Mother and the Child. During a visit on 12/13/02, the Mother was obviously high strung throughout the visit and a subsequent drug screen taken later that day was positive for cocaine.
For a short period of time prior to the birth of her latest child in November, the Mother had attempted to clean up and work with DFCS. However, that attempt has now failed. The Mother tested positive for cocaine on 12/19/02 and as a result, the maternal grandmother was given temporary custody of the new baby. The Mother tested positive for cocaine again on 01/06/03 and on 02/10/03, the drug screen was ruled "not typical" because the urine was diluted with water.
Again, the report found that appellant was abusing drugs, having problems completing her case plan, and did not have reliable employment or stable housing. The CASA recommended that the Department petition the court to terminate appellant's parental rights and that the foster parents be allowed to adopt J.G.J.P.
The fourth CASA report, dated July 15, 2003, stated that since the beginning of the case, appellant had failed to maintain any meaningful contact with the Department and had made no attempt to follow the case plan. With the exception of a brief period before the birth of her latest child, she had continued to abuse drugs. She did not have reliable employment and her housing situation was unstable. In conclusion, the report stated, "The Mother has made no effort to do what was necessary to regain custody of her Child."
On July 17, 2003, the juvenile court held a hearing on the Department's termination petition, taking judicial notice of all orders and pleadings in the case. Based on the evidence presented at the hearing, the juvenile court entered an order terminating appellant's parental rights with respect to J.G.J.P.
A termination of parental rights case involves a two-step analysis. First, there must be a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) the lack of proper parental care or control is the cause of the deprivation; (3) the cause of the deprivation is likely to continue; and (4) continued deprivation is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors exist, then the court must determine whether termination of parental rights is in the best interest of the child, considering the child's physical, mental, emotional, and moral condition and needs, including the need for a secure, stable home.
In the Interest of N.L.[2]
1. In her first enumeration of error, appellant challenges the first and third elements supporting a finding of parental misconduct or inability, contending that the trial court erred in terminating her parental rights because there was a lack of clear and convincing evidence showing current deprivation and the likelihood of future deprivation of J.G.J.P. This enumeration of error is meritless.
The first finding of parental misconduct or inability, i.e., whether J.G.J.P. is deprived, cannot be challenged. The juvenile court *324 entered an order on August 8, 2001, finding that J.G.J.P. was deprived, and appellant, having failed to appeal that order, is bound by the juvenile court's finding of deprivation. In the Interest of E.C.[3]
Appellant does not challenge the second element of the first prong of the analysis, i.e., whether a lack of proper parental care or control is the cause of the deprivation, but we address this issue because its resolution is material in determining whether termination of parental rights is in the best interest of J.G.J.P.
In cases in which the child is not in the custody of the parent who is the subject of the proceedings, in determining whether the child is without proper parental care and control, the court shall consider, without being limited to, whether the parent without justifiable cause has failed significantly for a period of one year or longer prior to the filing of the petition for termination of parental rights: to provide for the care and support of the child as required by law or judicial decree; and to comply with a court ordered plan designed to reunite the child with the parent or parents.
In the Interest of N.L., supra at 833, 581 S.E.2d 643.
Viewed in a light most favorable to the juvenile court's finding that appellant's failure to provide proper parental care or control was the cause of J.G.J.P.'s deprivation, the record shows that from July 5, 2001, the day the Department gained custody of J.G.J.P., until September 24, 2002, when the Department filed the petition for termination of her parental rights, appellant has, in the words of the CASA, "made no effort to do what was necessary to regain custody of her Child." She has failed completely to attain any of the goals set forth in the reunification plan. She has had no reliable or steady employment and has not contributed to the support of her child. She has never secured stable housing. She violated the rules of, and walked away from, the drug treatment program she was to complete, and she continues to abuse drugs. She did not attend the parenting skills program. She has not maintained a relationship with J.G.J.P. and certainly has not met his basic needs. Moreover, she has made no attempt to keep in touch with the Department and at times the Department did not know where she was living. The evidence that her failure to provide care and control is the cause of J.G.J.P.'s deprivation is not merely clear and convincing, it is overwhelming.
This same evidence also supports the trial court's finding that J.G.J.P.'s deprivation is likely to continue.
Although past deprivation is not sufficient for termination without a showing of present deprivation, the court can consider a parent's past conduct in determining whether such conditions of deprivation are likely to continue. The court was entitled to infer from the evidence that, despite the best efforts of the Department and many other social workers and charities, the same pattern of deprivation would continue if the [child was] reunited with [his] mother.
(Punctuation omitted.) In the Interest of N.L., supra at 835, 581 S.E.2d 643. Nothing in the record provides any basis for concluding that appellant will change her course of behavior.
2. Appellant also asserts that the trial court erred in terminating her parental rights because there was a lack of clear and convincing evidence showing termination is in the best interest of J.G.J.P. This enumeration, too, is meritless.
"The same factors that show parental misconduct or inability can support a juvenile court's finding that termination of parental rights is in the child's best interest." In the Interest of V.M.T.[4] Appellant's failure to achieve any of the goals set forth in the reunification plan, joined with the reports that J.G.J.P. has flourished in his new home, make it clear that the trial court was authorized to conclude that J.G.J.P.'s best interest would be served by terminating appellant's *325 parental rights and keeping him with his foster family.
Judgment affirmed.
BARNES and MIKELL, JJ., concur.
NOTES
[1] In the Interest of K.S.W., 233 Ga.App. 144, 147(1), 503 S.E.2d 376 (1998).
[2] In the Interest of N.L., 260 Ga.App. 830, 832-833, 581 S.E.2d 643 (2003).
[3] In the Interest of E.C., 225 Ga.App. 12, 15, 482 S.E.2d 522 (1997).
[4] In the Interest of V.M.T., 243 Ga.App. 732, 736-737(3), 534 S.E.2d 452 (2000).