639 S.E.2d 526 (2006)
In the Interest of D.E. et al.
No. A06A2297.
Court of Appeals of Georgia.
November 21, 2006.
William H. Newton III, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Charissa A. Ruel, Assistant Attorney General, Holly A. Bradfield, Rome, for appellee.
PHIPPS, Judge.
The mother of two minor children appeals orders of the Juvenile Court of Floyd County terminating her parental rights. She contends that the evidence is insufficient to support the orders. We disagree and affirm.
OCGA § 15-11-94(a) provides the two-step procedure for the termination of parental rights. The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[1]
*527 "On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost."[2]
The evidence here showed that the oldest child was born in November 1999. In April 2000, when the child was five months old, the juvenile court ordered the Floyd County Department of Family and Children Services (DFCS) to take custody of her, because appellant was incarcerated. Following an informal hearing at which appellant was present, the juvenile court found no suitable relatives with whom to place the child and ordered that custody of her be transferred to DFCS so that she could be placed in foster care. As ordered by the court, DFCS thereupon filed a petition alleging that the child was deprived. Following a hearing at which appellant was present and represented by counsel, the court entered an order finding the child to be deprived and directing DFCS to prepare a case plan in consultation with appellant. A case plan designed to reunify appellant with her daughter was thereafter prepared by DFCS and approved by the court.
Following the birth of appellant's second child in November 2000, the court ordered that she too be taken into DFCS's custody on grounds that appellant was not capable of taking care of her. As with the older sibling, DFCS filed a petition alleging that she was deprived; the court conducted a hearing at which appellant was present and represented by counsel; the court entered an order finding the child deprived; custody of the child was transferred to DFCS; and DFCS developed a case plan designed to reunify appellant with the child.
For about the next four years, there followed a series of orders by the juvenile court finding that the children continued to be deprived, based in part on appellant's re-incarceration; reports by the citizens review panel finding that appellant had not satisfactorily completed the goals of the case plans; and orders by the court continuing reunification case plans in effect with custody of the children remaining in DFCS. Finally, in January 2005, DFCS filed a petition to terminate appellant's rights to the two children. Following a hearing, the court in January 2006 entered the termination orders now appealed.
At the hearing, DFCS introduced the deposition testimony of Dr. Richard Hark, a psychologist who evaluated appellant in 1997 at the request of the juvenile court when she was 13 years old, in 2000 at the request of the Department of Juvenile Justice when she was 16 years old, and in February 2004 at the request of DFCS when she was 20 years old. DFCS also introduced the deposition testimony of Dr. Karl Whitlock, another psychologist who evaluated the children in August 2005.
Because of a history of school suspensions, rebelliousness, and "chronic acting out," Hark initially diagnosed appellant as "oppositional defiant, moderately severe." Although she had a "borderline IQ" in the mid 70s, he found that she possessed "remarkable academic skills." When Hark next evaluated her in 2000, she had quit school after failing several grades, had given birth to her first child, and was pregnant again. At that time, she admitted to Hark that she was too young to have children and intended to rely on the state to take care of her and them. Because of her continued hostility and lack of emotional maturity, Hark then diagnosed her as having severe "oppositional defiant disorder." When Hark evaluated appellant again in 2004, she had given birth to a third child.[3] According to Hark, appellant's psychological condition had worsened, and she was incapable of making the changes needed to become a suitable parent. Based on his evaluation of the children at issue in this case, Whitlock found that they were susceptible to developing emotional, behavioral, and learning problems, and he recommended that they remain with their foster parents where they could be provided with a sense of permanency, family therapy, and remedial academic assistance.
Additional evidence was presented at the hearing showing that the children were doing *528 well in foster care; that their foster parents were interested in adopting them; and that appellant had failed to comply with the case plans by not cooperating with DFCS personnel, by failing and refusing to attend mental health counseling, and by failing to visit the children regularly, bond with them, maintain stable employment or pay child support.
Here, the prior deprivation orders, unappealed by the mother, establish that the children are deprived.[4] In arguing that the evidence is insufficient to support the juvenile court's remaining findings, appellant relies on her own testimony that she had completed parenting classes and that she had failed to attend mental health counseling only because she was not made aware that she was required to do so. She also relies on the testimony of other witnesses that she had achieved the goal of maintaining stable housing, that she was cooperative with DFCS personnel, and that she had visited the children regularly. And she points to testimony by Dr. John Azar-Dickens, another psychologist who evaluated her and her relationship with the children at the request of DFCS in September 2005. He found no major personality disorder, thought that she had matured significantly, and found no stressors that would significantly impact her relationship with her children in a negative way. He further found, however, that she had not bonded with the children, and he was not optimistic that the parent/child relationship could be repaired.
Such conflicts in the evidence do not, however, "necessarily preclude satisfaction of the appellate standard of review. An appellate court's role is to determine if there is sufficient evidence to authorize the trial court's judgment; it is not to give a de novo opinion as to the weight of the evidence."[5] Here, there is sufficient evidence to support the juvenile court's judgments. At the time of the hearing, the children had been in foster care for over five years.[6] The evidence authorized the juvenile court to find no reasonable likelihood that the mother "would ever be capable of providing a stable home environment."[7] Under the circumstances, the juvenile court was authorized to make the determination that her parental rights should be terminated so that the children could be removed from foster care limbo and given a permanent home.[8]
Judgments affirmed.
RUFFIN, C.J., and SMITH, P.J., concur.
NOTES
[1] In the Interest of T.F., 250 Ga.App. 96, 97-98(1), 550 S.E.2d 473 (2001) (footnotes omitted).
[2] In the Interest of F.C., 248 Ga.App. 675, 549 S.E.2d 125 (2001) (footnote omitted).
[3] Appellant transferred custody of the third child to a relative.
[4] See, e.g., In the Interest of J.S.G., 242 Ga.App. 387, 388(1), 529 S.E.2d 141 (2000).
[5] In the Interest of Z.B., 252 Ga.App. 335, 338(1), 556 S.E.2d 234 (2001) (citations and punctuation omitted).
[6] See also In the Interest of C.T.M., 278 Ga.App. 297, 302(2), 628 S.E.2d 713 (2006).
[7] Id.
[8] Id.