A07A1198, A07A1199. IN THE INTEREST OF D. O. R., a child
(two cases).
(653 SE2d 314)

BARNES, Chief Judge.

The mother and father of D. O. R. appeal the termination of their parental rights, which we have consolidated for consideration. The father contends that the evidence does not clearly and convincingly establish that he was unfit or unable to care for the child. The mother contends that the evidence does not establish that the child's deprivation would continue or that continued deprivation would harm the child, and also contends her rights to due process were violated. For the reasons that follow, we affirm the juvenile court's decision to terminate the parental rights of both parents.

In considering the parents' appeals, we view the evidence in the light most favorable to the juvenile court's disposition and determine whether any rational trier of fact could have found by clear and convincing evidence that the parents' rights should have been terminated. We neither weigh the evidence nor determine the credibility of any witnesses, but instead defer to the juvenile court's findings of fact. *In the Interest of J. G. J. P.*, 268 Ga. App. 614 (602 SE2d 320) (2004).

So viewed, the evidence shows that the Department of Family and Children Services (DFACS) became involved with D. O. R.'s mother before he was born. In July 2003, DFACS worked with the mother to develop a safety or case plan regarding her first child, a daughter. When the mother became pregnant with D. O. R. in the summer of 2004, DFACS was still working with her. In August 2004 the mother was taken to the hospital after she tried to cut her wrists, where she reported increased depression during her pregnancy because she said D. O. R.'s father did not want the baby. In October 2004, when she was eight months pregnant, she reportedly got into a physical fight with the father who thought she was going to smoke a cigarette.

When D. O. R. was born, the caseworker visited the mother and father at the hospital and tried to convince the mother to enter into a social services safety plan with DFACS so that D. O. R. could stay with her, but the mother, then 19, was adamant about living with the father, then 20, and would not agree with the terms and conditions of the plan. DFACS obtained an emergency protective order to gain custody of D. O. R. On the day D. O. R. was to be discharged from the hospital into DFACS custody, hospital security was called because the father was angry.

The juvenile court issued a shelter care order, and subsequently an order finding the child deprived and directing DFACS to prepare

a case plan for reunification. Both parents stipulated that the allegations in the deprivation petition were true. Three months later, DFACS moved the court to allow the plan to change to nonreunification, termination of parental rights, and adoption because the parents refused to work on the plan. After a hearing, the juvenile court made factual findings and concluded that reunification efforts should be terminated, noting that the parents would have to complete the elements of the plan sufficiently to remove the risk to the child before they could regain custody.

After a status conference in September 2005, the court denied the parents' request for return of custody, finding that the causes and conditions of D. O. R.'s deprivation had not been remedied. The court also ordered the parents to submit to a drug screen, which they refused to do. In March 2006, DFACS petitioned the juvenile court to terminate both parents' parental rights, and the court appointed a guardian ad litem to represent D. O. R.'s interest. Both parents answered and requested an additional six months to complete the plan goals. Following a hearing in May 2006, the juvenile court terminated the parental rights of D. O. R.'s mother and father.

The evidence supports the juvenile court's findings that neither parent completed the goals of the reunification case plan. Neither maintained stable residences for six months, each having moved four or five times in the previous eighteen months, and neither had maintained a job for six months. The mother did not obtain a domestic violence assessment, although the record reflects a relationship with D. O. R.'s father which was always volatile and unhealthy, as well as mental and physical abuse. Relatives and counselors testified that the mother sought the protection of the local battered women's shelter several times and other times called her aunt to come and pick her up. She did not follow up with counseling. The father never paid any support and the mother made only one payment of $30 two weeks before the hearing.

DFACS requested three drug screens and in September 2005 the court ordered the parents to undergo a drug screen, but neither complied. The father explained at the termination hearing that he would not take the court-ordered drug test because he was angry about the nonreunification plan. He did not begin his anger management classes until January 2006, and only attended three classes. He sought another six months to comply with the plan, testifying that he would stay in the job and house he obtained a month before the hearing, so that in six months he would have seven months of stability as required by his case plan. He also admitted signing termination papers in March 2005 which he rescinded within ten minutes. When asked why he had not completed the anger management classes in the past 18 months, he explained:

I figure as a father — I don't even see why I was on the case plan. I didn't know I was going to get a case plan by me signing legitimation — getting legitimation papers and stuff like that because I just thought it was for the mother. That's one reason why I was looking at it as like the mother is the reason for the child being there [in DFACS custody] and I ain't really no cause of nothing that's in it but I've still got to follow the case plan, I guess.

The mother also sought an extension of six months to meet the goals in her original reunification plan but said she was not then ready to take the child. She testified that she would be ready in six months because she had a better-paying job, which she started two days before the hearing. She could not explain why she had refused to take a drug screen or failed to meet with the domestic violence assessor.

A juvenile court considers two issues in deciding whether a parent's rights to his child should be terminated. OCGA § 15-11-94 (a). First, it considers whether clear and convincing evidence establishes parental misconduct or inability, and in doing so considers four factors: (i) Is the child deprived? (ii) Did lack of proper parental care or control cause the deprivation? (iii) Is the cause of the deprivation likely to continue or unlikely to be remedied? and (iv) Would continued deprivation cause serious physical, mental, emotional, or moral harm? OCGA § 15-11-94 (b) (4) (A) (i)-(iv).

If the court finds parental misconduct or inability after considering these four factors, then it must consider whether the termination of the parents' rights would be in the child's best interest, "considering the physical, mental, emotional, and moral condition and needs of the child . . . , including the need for a secure and stable home." OCGA § 15-11-94 (a); *In the Interest of R. W.*, 248 Ga. App. 522, 523-524 (1) (546 SE2d 882) (2001).

1. The father challenges the evidence as to each of the four factors establishing parental misconduct or inability; the mother challenges only the third and fourth, which are that the cause of the deprivation is likely to continue or unlikely to be remedied, and that continued deprivation would cause serious physical, mental, emotional, or moral harm. In this case, ample clear and convincing evidence of the four factors established parental misconduct or inability.

(i) *Deprivation.* The parents stipulated that the allegations set forth in the deprivation petition were true, and, as the mother concedes, they are bound by the juvenile court's unappealed findings of fact contained in the order finding D. O. R. deprived. See *In the Interest of M. H. W.*, 277 Ga. App. 318, 319 (1) (a) (626 SE2d 515) (2006).

(ii) *Cause of deprivation.* The second factor to consider is whether the parents' lack of care or control caused the child's deprivation. While the mother does not argue this point, the father argues only that DFACS cannot prove he is unfit because he never had an opportunity to attempt to provide proper care and control for D. O. R., who has been in DFACS custody all of his life. In determining whether the child lacks proper parental care and control when the child is not in the parent's custody, the court shall consider whether the parent without justifiable cause has significantly failed to provide for the child's care and support for at least a year before the termination petition was filed or failed to comply with a court-ordered plan designed to reunite the child with the parent. OCGA § 15-11-94 (b) (4) (C) (ii)-(iii).

In support of its previous adjudication that D. O. R. was deprived, the juvenile court found that the child "was without proper parental care or control" and the deprivation was caused by neglect, inadequate housing, and domestic violence. The parents' failure to appeal the deprivation order also renders the juvenile court's determination on this second factor binding. *In the Interest of K. N.*, 272 Ga. App. 45, 52 (a) (2) (611 SE2d 713) (2005). Additionally, both parents failed to pay even the minimal support required by their case plan, and neither substantially completed their plan goals.

(iii) *Cause likely to continue.* Third, in determining whether the child's deprivation is likely to continue, the juvenile court may consider the parent's past conduct. *In the Interest of A. C.*, 234 Ga. App. 717, 719 (507 SE2d 549) (1998). The mother contends that "the un-rebutted testimony at the hearing" was that she had no more contact with the father, other than during visitation, and that all of her problems stemmed from her relationship with him. To the contrary, the mother rebutted her own testimony, explaining that she had to leave a relative's home because she kept "running back and forth" to the father. The aunt testified that this happened a few weeks before the hearing.

The father contends that the record is void of any expert testimony that continuing his parental rights would be detrimental to the child, that his relationship with the child was harmful, or that he had abused the child in any way. The juvenile court need not give custody to the parent to determine current unfitness evidence. *In the Interest of A. W.*, 240 Ga. App. 259, 263 (523 SE2d 88) (1999). The father failed to complete almost all of the goals in his case plan, and in fact did not consider the plan his responsibility because he thought all of the problems were caused by the mother. His complete failure to support his child is compelling evidence that he is not an able parent, *In the Interest of T. B.*, 267 Ga. App. 484, 486-487 (1) (600 SE2d 432) (2004),

and his representation that he would complete all the goals if given another six months is belied by his inaction of the previous eighteen months.

(iv) *Continued deprivation will harm the child.* Considering the same evidence that the cause of the deprivation was likely to continue, the juvenile court was entitled to infer that the deprivation would seriously harm the child if either parent gained custody. *In the Interest of B. S.*, 283 Ga. App. 724, 727 (1) (d) (642 SE2d 408) (2007). Based on the parents' past behavior and their unwillingness and inability to comply with significant requirements of their case plan, we find that a rational factfinder could have found by clear and convincing evidence that giving custody to either parent would seriously harm the child. The caseworker testified that neither parent appeared to have bonded with D. O. R., who did not seem to recognize them and cried throughout most of their visits.

2. After determining that clear and convincing evidence established the parents' misconduct or inability, the trial court then determined that, "considering the physical, mental, emotional, and moral condition and needs of the child," termination of parental rights was in the child's best interest. The child had been in DFACS custody since November 23, 2004, the day after he was born. The statute itself provides that the court may consider the child's "need for a secure and stable home," OCGA § 15-11-94 (a), something the parents clearly were unable to provide. The court may also consider "the detrimental effects of prolonged foster care." (Citation omitted.) *In the Interest of M. L.*, 227 Ga. App. 114, 117 (2) (488 SE2d 702) (1997). Children without a permanent home and emotional stability are likely to suffer serious emotional problems, *In the Interest of J. O. L.*, 235 Ga. App. 856, 858 (510 SE2d 613) (1998), and the caseworker testified that DFACS had a family ready to adopt D. O. R., who at his young age and good health had no barrier to overcome in being adopted. Additionally, the factors that show the parents' inability to care for their child support the finding that termination of parental rights would be in the child's best interest. Id.

3. Finally, the mother contends that under the facts of this particular case, terminating her parental rights would violate due process because, despite significant evidence of domestic violence, DFACS scheduled every visitation with both parents at the same time. Noting that the biggest obstacle to her reunification with D. O. R. was her abusive relationship with the father, she argues that she should have a chance to find stability in her life free from his influence. The record establishes that the mother had numerous opportunities to establish her life without the father. Her relatives took her in repeatedly but she kept returning to him. She went to a battered women's shelter several times but returned to him. She

would not undergo a domestic violence assessment which would have revealed whether she needed any other resources or counseling, despite the assessor's offer to meet her in the same building before her scheduled visits with D. O. R. Considering the resources DFACS made available to the mother, her claim of a due process violation is meritless.

Accordingly, we affirm the order of the juvenile court terminating the parental rights of D. O. R.'s mother and father.

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 27, 2007.

*John P. Rivers*, for appellant (case no. A07A1198).

*Clark & Williams, Jason R. Clark, Dorothy R. Avera*, for appellant (case no. A07A1199).

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, James A. Chamberlin, Jr.*, for appellee.

