657 S.E.2d 329 (2008)
In the Interest of C-J.N., a child.
No. A07A2193.
Court of Appeals of Georgia.
January 31, 2008.
*330 Hallman & Martin, Alison M. Hallman, for appellant.
Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Coleman & Chambers, John R. Coleman Jr., Gainesville, for appellee.
MIKELL, Judge.
The mother of six-year-old C-J.N. appeals the juvenile court's order terminating her parental rights. She claims that the juvenile court erred (i) in finding clear and convincing evidence that the deprivation of the child will continue or not be remedied, (ii) in finding the termination to be in the child's best interest, and (iii) in denying her motion for a continuance. For the reasons that follow, we disagree and affirm.
"On appeal from a termination order, this Court views the evidence in the light most favorable to the appellee and determines whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost."[1] So viewed, the evidence shows that the juvenile court found C-J.N. and two of the mother's other children, S.H. *331 and A.N., to be deprived in its November 21, 2005 order, and directed that temporary custody of the children be placed with the Hall County Department of Family and Children Services (the "Department"). The juvenile court concluded that, among other things, "[a] the children in the mother's home, including two not currently in her care,[2] have either been victims, perpetrators or both of inappropriate sexual activity." The juvenile court also determined that there was a complete lack of supervision by the mother in allowing such activity to occur while the children were under her care. The mother did not appeal the order.
On January 5, 2006, the juvenile court approved a plan to reunify the mother with C-J.N., S.H., and A.N. The plan provided that she substantially comply with eight elements, including that (i) no sexual perpetrator may reside in the home, (ii) the mother must complete counseling, (iii) the mother must follow the recommendations of the children's health provider, (iv) the mother must complete parenting classes, (v) the mother must obtain and maintain for six consecutive months an income sufficient to support herself and the children, (vi) the mother must obtain and maintain for six consecutive months stable, clean, and safe housing, (vii) the mother must obtain child care or otherwise assure proper supervision of the children, and (viii) the mother must cooperate with family services and follow all recommendations.
The juvenile court issued a supplemental order, filed on March 14, 2006, following a report by a citizen review panel. The juvenile court found, among other things, that the mother was living with a registered sex offender and did not understand or accept the severity of the children's abuse. The juvenile court approved a revised reunification case plan which added goals providing that the mother attend a drug and alcohol treatment program and remain drug and alcohol free for six consecutive months.
The juvenile court entered an order, nunc pro tunc to September 13, 2006, extending custody of the children, including C-J.N., with the Department. During the motion hearing the mother asked the court to return C-J.N. to her custody but admitted that she was not in a position at that time to care for the two other children. In its order, the juvenile court noted previously undisclosed evidence of inappropriate sexual conduct among members of the mother's extended family, particularly that the mother's cousin had molested an older sibling of the children who were the subjects of the proceeding, and that the mother's eldest son "has been a victim and possible perpetrator of inappropriate sexual conduct."
On November 29, 2006, the Department filed a petition to terminate the mother's parental rights as to C-J.N. The juvenile court conducted a hearing on the petition on February 14, 2007, and March 14, 2007. At the hearing, the psychologist treating C-J.N. testified that the child exhibited behavior typical of children who have been sexually abused, and that C-J.N. had steadily maintained that he had been abused by his older brothers on many occasions. This testimony was consistent with the testimony of S.H.'s therapist that S.H. had disclosed committing over 300 acts of sexual abuse against his siblings. During his forensic interview, C-J.N. recounted numerous sexual incidents with his siblings, including oral and anal sex. According to C-J.N.'s. psychologist, C-J.N. was at risk of being re-victimized, and required a very skilled caregiver. The psychologist also testified that C-J.N. "needs to be placed with children who don't have sexual issues." The psychologist agreed that considering that C-J.N. was at risk of being a victim, it would not be a "good combination" for the, child to live with a convicted child molester.
The mother testified that she was aware that her case plan required that she have no "sexual perpetrator" residing in her home. She admitted that her current husband was a sexual perpetrator and that she and her husband had just moved into a new home. The husband's conviction for child molestation *332 and felony statutory rape pursuant to a guilty plea was admitted into evidence. The mother also acknowledged that her case plan required that she attend and successfully complete counseling sessions or psychological evaluation, and that she attend specialized parenting classes. She admitted that she had not done these things, notwithstanding that these elements of her case plan had been in effect for more than a year, although she later testified she had completed parenting classes.
1. A juvenile court's termination of parental rights is a two-step process:
The first step requires a finding of parental misconduct or inability, which requires clear and convincing evidence that: (1) the child is deprived; (2) lack of proper parental care or control is the cause of the deprivation; (3) such cause of deprivation is likely to continue; and (4) the continued deprivation will cause or is likely to cause serious physical, mental, emotional, or moral harm to the child. If these four factors are satisfied, the court must then determine whether termination of parental rights is in the child's best interest, considering physical, mental, emotional, and moral condition and needs, including the need for a secure and stable home.[3]
On appeal, the mother claims that the trial court erred in finding clear and convincing evidence that C-J.N.'s deprivation will likely continue and not be remedied. She does not challenge the juvenile court's findings as to the other three factors required to show parental misconduct or inability.
In finding that C-J.N.'s deprivation would likely continue and not be remedied the juvenile court first looked to the mother's past failure to protect the child and questioned how, in light of the evidence of extensive sexual misconduct in her household, the mother could have failed to notice that something was seriously wrong. Although a determination of parental unfitness must be based on present' circumstances,[4] "evidence of past conduct may properly be considered in determining whether the deprivation would be likely to continue if the [child is] returned to [his] mother."[5] The juvenile court further concluded that the mother exhibited poor judgment in continuing to live with her current husband, a convicted child molester, notwithstanding her case plan's longstanding requirement that no perpetrator should reside in the home. "Repeated failure to comply with case plan goals may also show that the cause of the deprivation is likely to continue."[6] The juvenile court further concluded that the "mother is just not getting the message" as to C-J.N.'s needs. As an apparent example, the juvenile court expressed its concern that the mother testified that she intended for her oldest son to return home, notwithstanding that the juvenile court had previously found the son to be the victim of and possibly the perpetrator of sexual abuse.
The mother argues that she has "made great progress," and suggests that any delay in completing her case plan was due to a severe injury to her leg. However, "[i]n considering recent improvement, the trial court, not the appellate court, determines whether a parent's conduct warrants hope of rehabilitation."[7]
Given the evidence, including the mother's past inability to protect her children from sexual abuse, her failure to address longstanding portions of her case plan, and her failure to appreciate the requirements for caring for C-J.N., we conclude that any rational trier of fact could find by clear and convincing evidence that C-J.N.'s deprivation was likely to continue and not be remedied.[8] *333 It follows that, in light of the mother's failure to challenge the other three factors, the trial court did not err in finding parental misconduct or inability on the part of the mother.
2. The mother also claims the juvenile court erred in finding the termination to be in C-J.N.'s best interest. We disagree.
"The same factors that show parental misconduct or inability can support a juvenile court's finding that termination of parental rights is in the child's best interests."[9]
Thus, a finding as to whether the termination of parental rights is in the best interest of the child represents, in essence, a finding as to whether the specifics of the parental default that have otherwise been found to exist are of such magnitude as to warrant the conclusion that the child himself would be better served by the grant of the petition to terminate.[10]
In light of the evidence of sexual abuse to the child while under her care and the mother's failure to address elements of her case plan designed to protect the child from further abuse, the trial court did not err in finding that the termination of the mother's parental rights was in C-J.N.'s best interest.[11]
3. Lastly, the mother contends the trial court erred in failing to grant a continuance to allow the mother additional time to complete elements of her case plan and to discover additional information as to who abused the mother's children. The "trial court's decision to grant or to deny a continuance will not be disturbed absent abuse of discretion," and, "the party seeking a continuance must show due diligence."[12] Given that the mother waited until the day of the termination hearing to ask for a continuance, and given that the juvenile court determined that it was in the child's best interest to reach a timely decision regarding his permanency, we find no abuse of discretion.
Judgment affirmed.
JOHNSON, P.J., and PHIPPS, J., concur.
NOTES
[1] (Punctuation and footnote omitted.) In the Interest of D.E., 282 Ga.App. 519, 639 S.E.2d 526 (2006).
[2] The mother had five children including the three who were the subjects of the deprivation petition. The mother's eldest son was living with his maternal grandmother, and the mother's daughter was living with her father.
[3] (Footnotes omitted.) In the Interest of T.F., 250 Ga.App. 96, 97-98(1), 550 S.E.2d 473 (2001). See OCGA § 15-11-94(a), (b)(4)(A)(i).(iv).
[4] In the Interest of L.J.L., 247 Ga.App. 477, 480, 543 S.E.2d 818 (2001).
[5] (Citation omitted.) In the Interest of A.H., 278 Ga.App. 192, 195(2), 628 S.E.2d 626 (2006).
[6] (Citation omitted.) Id.
[7] (Footnote omitted.) In the Interest of A.M.L., 242 Ga.App. 121, 124(1)(c), 527 S.E.2d 614 (2000).
[8] See In the Interest of B.J., 220 Ga.App. 144, 146(1), 469 S.E.2d 313 (1996) (finding that mother's past conduct would continue and not be remedied supported by, among other things, her past failure to protect her children from sexual abuse),
[9] (Footnote omitted.) In the Interest of V.M.T., 243 Ga.App. 732, 736-737(3), 534 S.E.2d 452 (2000).
[10] (Citations omitted; emphasis in original.) In the Interest of G.K.J., 187 Ga.App. 443, 444(2), 370 S.E.2d 490 (1988).
[11] See In the Interest of M.L.P., 236 Ga.App. 504, 510(1)(d), 512 S.E.2d 652 (1999) (juvenile court has broad discretion in determining how the interest of the child is best served).
[12] (Citations and footnote omitted.) In the Interest of T.R., 270 Ga.App. 401, 401-402(1), 606 S.E.2d 630 (2004).